JAMES A. PATTEN
PATTEN, PETERMAN,
BEKKEDAHL & GREEN,
        PLLC
Suite 300, The Fratt Building
2817 Second Avenue North
Billings, MT 59101-2041
Telephone:  (406) 252-8500
Facsimile:  (406) 294-9500
email:  apatten@ppbglaw.com

STEPHAN C. VOLKER (Pro hac vice)
ALEXIS E. KRIEG (Pro hac vice)
STEPHANIE L. CLARKE (Pro hac vice)
JAMEY M.B. VOLKER (Pro hac vice)
LAW OFFICES OF STEPHAN C. VOLKER
1633 University Avenue
Berkeley, California 94703-1424
Telephone:  (510) 496-0600
Facsimile:  (510) 845-1255
email:      svolker@volkerlaw.com
            akrieg@volkerlaw.com
            sclarke@volkerlaw.com
            jvolker@volkerlaw.com

Attorneys for Plaintiffs
INDIGENOUS ENVIRONMENTAL NETWORK
and NORTH COAST RIVERS ALLIANCE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVERS ALLIANCE, <br><br> Plaintiffs, <br> vs. <br><br> PRESIDENT DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as U.S. Secretary of State; UNITED STATES ARMY CORPS OF ENGINEERS; LT. GENERAL TODD T. SEMONITE, Commanding General and Chief of Engineers; UNITED STATES FISH AND WILDLIFE SERVICE, a federal agency; MARGARET EVERSON, in her | Civ. No. CV 19-28-GF-BMM <br><br> **PLAINTIFFS' REPLY TO TC ENERGY'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> **Judge:  Hon. Brian M. Morris** <br> **Case Filed:  April 5, 2019** <br> **Hearing:** |

official capacity as Acting Director of the      )
U.S. Fish and Wildlife Service; UNITED           )
STATES BUREAU OF LAND                            )
MANAGEMENT, and DAVID                            )
BERNHARDT, in his official capacity as           )
U.S. Secretary of the Interior,                  )
                                                 **)**
          Defendants,                    **)**
                                                 **)**
TRANSCANADA KEYSTONE PIPELINE,**)**
LP, a Delaware limited partnership, and TC **)**
ENERGY CORPORATION, a Canadian                   **)**
Public Company,                                  **)**
                                                 **)**
          Defendant-Intervenors.          **)**
_____ **)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  TCE HAS ABANDONED THREE KEY ARGUMENTS. . . . . . . . . . . . 7

III.  TCE'S REMAINING ARGUMENTS LIKEWISE FAIL. . . . . . . . . . . . 9

    A.  CONGRESS HAS EXPLICITLY REQUIRED COMPLIANCE
        WITH EO 13,337. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.  CONGRESS HAS IMPLIEDLY REQUIRED COMPLIANCE
        WITH EO 13,337. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.  THE 2019 PERMIT VIOLATED EO 13,337.. . . . . . . . . . . . . . . 15

IV.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM. . . . . . . . . . . 16

V.  THE BALANCE OF HARM AND THE PUBLIC INTEREST
    FAVOR PLAINTIFFS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Insurance Association v. Garamendi*
    539 U.S. 396 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bob Marshall Alliance v. Hodel*
    852 F.2d 1223 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bob Marshall Alliance v. Lujan*
    804 F.Supp. 1292 (D. Mont. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Citizens for Smart Growth v. Secretary of Dept. of Transp.*
    669 F.3d 1203 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Carmel-by-the-Sea v. U.S. Department of Transportation*
    123 F.3d 1142 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Dania Beach v. F.A.A.*
    628 F.3d 581 (D.C. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Franklin v. Massachusetts*
    505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*IEN v. State*
    2019 WL 652416 (2/15/19). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*League of Conservation Voters v. Trump*
    363 F.Supp.3d 1013 (D.Ak. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Legal Aid Society of Alameda County v. Brennan*
    608 F.2d 1319 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Panama Refining Co. v. Ryan*
    293 U.S. 388 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Save the Yaak Committee v. Block*
    840 F.2d 714 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sierra Club v. Clinton*
    689 F.Supp.2d 1147 (D. Minn. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wyoming Wildlife Federation v. United States*
    792 F.2d 981 (10th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Youngstown Sheet & Tube Co. v. Sawyer*
    343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **CONSTITUTION**

United States Constitution, Article I
    § 8, cl. 3 (Commerce Clause). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

United States Constitution, Article IV
    § 3, cl. 2 (Property Clause). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## **FEDERAL STATUTES**

United States Code, Title 5
    § 706 (Administrative Procedure Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States Code, Title 16
    §§ 1531 *et seq.* (Endangered Species Act). . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States Code, Title 33
    § 1344 (Clean Water Act Section 404). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States Code, Title 42
    §§ 4321 *et seq.* (National Environmental Policy Act). . . . . . . . . . . . . . *passim*

United States Code, Title 54
    §§ 300101 *et seq.* (National Historic Preservation Act). . . . . . . . . . . . . . . 12

Public Law No. 112-78, 125 Stat. 1280 (2011)
    § 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 15

## **OTHER AUTHORITIES**

84 Fed.Reg. 13,101 (4/3/2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

84 Fed.Reg. 15,491 (4/10/19). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

President Obama's Veto Message to the Senate:
    S. 1, Keystone XL Pipeline Approval Act
    2015 WL 758544 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

# I.  INTRODUCTION

Plaintiffs' Opening Memorandum filed July 10, 2019 demonstrated their entitlement to a preliminary injunction because (1) Plaintiffs are likely to prevail on their claims under the Property and Commerce Clauses of the U.S. Constitution and Executive Order  ("EO") 13,337, (2) Plaintiffs would suffer irreparable harm absent injunctive relief, (3) the balance of harm favors Plaintiffs, and (4) injunctive relief would serve the public interest.  Dkt. 27-2.  Plaintiffs' Renewed Motion filed January 31, 2020 updated the threatened harm  (Dkt. 82-1) and incorporated Plaintiffs' Responses filed January 24, 2020 (Dkt. 80) to this Court's December 20, 2019 Scheduling Order (Dkt. 74) posing eight merits questions.  In their Opposition filed February 10, 2020 ("Opp.") (Dkt. 86), Intervenor-Defendants TransCanada Keystone Pipeline, LP and TC Energy Corporation (collectively "TCE") abandon several previous arguments and fail to overcome Plaintiff's demonstration that a preliminary injunction is warranted, as shown below.

# II.  TCE HAS ABANDONED THREE KEY ARGUMENTS.

Notably, TCE has abandoned its previous, unpersuasive arguments that Plaintiffs lack standing because "[t]he 2019 Permit authorizes . . . *only* 1.2 miles of pipeline facilities *at* the U.S./Canadian border" and "Plaintiffs do not . . . allege that . . . pipeline facilities in that 1.2-mile corridor will harm them."  TCE Opposition filed July 24, 2019 (Dkt. 42) 2-3 (original emphasis).  This Court rejected that argument.  December 20, 2019 Order (Dkt. 73; "Order") 15-18.  TCE

has also abandoned its previous claim that "[t]o the extent . . . construction in the 1.2-mile corridor . . . will cause injuries to [Plaintiffs] outside of this area, those injuries are not traceable to the [2019 Permit]" because the National Environmental Policy Act ("NEPA") "does not apply to the President."  Doc. 42, 12-13.  This Court likewise rejected that argument.  Order  17.  And, TCE has abandoned its previous claim that Plaintiffs' "injuries would not be redressable" because a "'grant of injunctive relief against the President himself is extraordinary.'"  Doc. 42, 13.  This Court denied that claim as well.  Order 18-20.

Even more significant, TCE has abandoned its arguments that President Trump did not violate the Commerce Clause and the Property Clause.  Previously, TCE "assert[ed] that President Trump exercised his power over foreign affairs and as Commander-in-Chief when he issued the 2019 Permit."  Order 23.  But this Court rejected that argument, reasoning that "[w]hen the Constitution wanted both branches to be involved in an area of foreign affairs, it said so.  Without more, it is unclear that the President would possess any authority to exercise control over an area of foreign affairs that falls explicitly within Congress's foreign affairs powers."  Order 25.

TCE also previously argued that "Plaintiffs cannot show . . .the 2019 Permit violated the Property Clause" because "the 2019 Permit does not allow [TCE] to use . . . any federal land without obtaining required rights-of-way grants . . . or other authorizations as may become necessary or appropriate."  Dkt. 42, 15-16.  But this Court rejected that contention, explaining that although the 2019 Permit

- 8 -

did not "excus[e] TC Energy from obtaining a BLM right-of-way or any other federal permits . . . [where] the 1.2-mile pipeline segment . . . would cross federal land, . . . [t]he 2019 Permit ignores, however, the 2004 Executive Order's national interest determination by the Secretary of State and excuses . . . Keystone . . . from comprehensive State Department review."  Order 31-32.  This Court pointed out that under *League of Conservation Voters v. Trump* ("*LCV*"), 363 F.Supp.3d 1013, 1029-1031 (D. Alaska 2019), President Trump may not "interfere[] with Congress's exclusive authority to regulate public lands under the Property Clause," and that the "President arguably interfered with Congress's constitutional power to manage federal lands by issuing the 2019 Permit without requiring the congressionally-approved comprehensive State Department review process set forth in the 2004 Executive Order."  Order 33-34.

### III.  TCE'S REMAINING ARGUMENTS LIKEWISE FAIL.

Tacitly conceding this Court's rejection of its challenges to Plaintiffs' standing and Commerce and Property Clause claims as noted above, TCE now advances just four arguments:  (1) that Congress has neither "explicitly" nor "impliedly required the President to comply with Executive Order 13,337"  (Opp. 3-15), (2) "the 2019 Permit did not violate E.O. 13,337" (Opp. 15-18), (3) "Plaintiffs have failed to show . . . irreparable harm" (Opp. 18-26), and "the balance of hardships weighs against an injunction" (Opp. 27-28).  As shown below, all four of TCE's remaining arguments fail as well.

A.     **CONGRESS HAS EXPLICITLY  REQUIRED COMPLIANCE WITH EO 13,337.**

Without acknowledging it is doing so, TCE directly challenges this Court's ruling that "Congress has approved of the permitting process set forth in the 2004 Executive Order."  Order 36.  TCE asserts to the contrary that Congress has neither "explicitly" nor "impliedly" required the President to comply with EO 13,337.  Opp. 3-15.  It advances several arguments to support its claim.  All fail.

First, TCE raises the strawman argument that "Plaintiffs effectively claim that the [Temporary Payroll Tax Cut Continuation Act of 2011; Pub. L. No. 112-78, 125 Stat. 1280, Title V ("TPTCCA")] codified E.O. 13,337," and then spends four pages arguing that "the [TPTCCA] did no such thing."  Opp. 3-7.  But Plaintiffs did not make that argument.  As this Court observed in agreeing with Plaintiffs' actual argument, "Plaintiffs allege that President Trump issued the 2019 Permit without having obtained the views of various federal agencies and without the Secretary of State's determination of whether issuance of the permit would serve the national interest.  (Dkt. 37 at 31-32.)  Plaintiffs further assert that the 2019 Permit relieves TCE from complying with other applicable laws and regulations."  Order 34-35.  These are the allegations that Plaintiffs actually made.  Plaintiffs' allegations are indisputable.  As this Court explained, "President Trump purported to issue the 2019 Permit 'notwithstanding' the 2004 Executive Order."  Order 36, quoting 84 Fed.Reg. 13101.

Instead of attacking arguments Plaintiffs never made, TCE should concede the correct arguments that Plaintiffs did make, namely, that "the President lacks the inherent constitutional authority unilaterally to approve cross-border pipeline permits" since Article I, section 8, clause 3 of the Constitution assigns exclusive authority over foreign commerce to Congress, and, that, as this Court has agreed, "Congress has approved of the permitting process set forth in the 2004 Executive Order." Order 36; *American Insurance Association v. Garamendi*, 539 U.S. 396, 414 (2003).

Second, TCE takes issue with Plaintiffs' reliance on Congress' selection of the words "under Executive Order No. 13,337" when it wrote the TPTCCA, theatrically declaring that "this phrase cannot possibly bear the weight Plaintiffs ascribe to it." Opp. 7. But Plaintiffs did not choose these words. Congress did. And this Court is bound by what Congress did, not what TCE would prefer.

Third, TCE ignores Plaintiffs' dispositive point that Congress instructed that any Presidential permits for Keystone must be issued "through the Secretary of State." TPTCCA § 501(a), 125 Stat. at 1289. Contrary to Congress' *explicit* direction, the 2019 Permit was issued by the President personally, rather than "through the Secretary of State." The President's deliberate evasion of this express Congressional directive indisputably violated this mandate.

As Plaintiffs have emphasized and this Court has agreed, Trump's intentional circumvention of the Secretary of State's review *fundamentally*

contravenes the purpose of Congress' explicit command, because unlike the President, the Secretary of State must comply with Congress' comprehensive statutory scheme for environmental protection and interagency review, as carefully articulated through the Administrative Procedure Act (5 U.S.C. § 706; "APA"), the National Environmental Policy Act (42 U.S.C. §§ 4321 et seq.; "NEPA"), the Endangered Species Act (16 U.S.C. §§ 1531 et seq.; "ESA"), the Clean Water Act (33 U.S.C. §§ 1251 et seq.; "CWA"), the Federal Land Policy Management Act, 43 U.S.C. §§ 1701 et seq.), and the National Historic Preservation Act (54 U.S.C. §§ 300101 et seq.).  Dkt. 27-2 , 24-25; Dkt. 80, 32; Order 30-34.

Fourth, TCE mistakenly asserts "the fact that the Keystone XL Approval Act was vetoed" does not disprove "Congress's intent" to mandate Keystone's approval.  Opp. 10.  But actually, it does just that.  Had Congress fully intended to mandate Keystone's approval, it would have overridden President Obama's veto and adopted that Act nonetheless.  The fact that it *failed* to override his veto, and consequently *failed* to enact this proposed law, is controlling.  As the Supreme Court has explained, the "fact that 'Congress had refused to adopt' proposals [is] evidence of its intent.'"  Opp. 10, fn. 2, quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 586 (1952).

Under *Youngstown*, Congress' failure to override President Obama's veto shows that Congress chose *not* to mandate Keystone's approval over the President's objections.  *Id*.  Those objections carried the day with Congress.  And those objections correspond exactly with Plaintiffs' arguments here.  As this Court

- 12 -

has astutely noted,  President Obama persuaded Congress to preserve and respect the Secretary of State's "consideration of issues that could bear on our national interest–including our security, safety, and environment."  Dkt. 80 at 26, citing President Obama's Veto Message to the Senate: S. 1, Keystone XL Pipeline Approval Act, 2015 WL 758544 at *1 (2015).  TCE ignores what Congress choose *not* to do, and why.

Finally, TCE argues that "*Franklin v. Massachusetts*, 505 U.S. 788 (1992) forecloses Plaintiffs' reading of the [TPTCCA]."  Opp. 10.  Wrong.  *Franklin* supports Plaintiffs, not TCE.  *Franklin* held, consistent with Plaintiffs' position, that "the President is not an agency within the meaning of the [Administrative Procedure] Act."  505 U.S. at 706.  Indeed, that point forms the crux of Plaintiffs' argument that President Trump issued the 2019 Permit personally, rather than "through the Department of State" as directed by Congress in the TPTCCA, specifically to evade APA review and avoid compliance with environmental laws such as NEPA.  And contrary to TCE's position, *Franklin* held–as this Court has already pointed out–that federal courts may review Presidential decisions challenged on constitutional grounds.  Order 19 (citing *Franklin*, *Youngstown* and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)).

**B.**   **CONGRESS HAS IMPLIEDLY REQUIRED COMPLIANCE WITH EO 13,337.**

TCE next argues–again, contrary to this Court's previous determination–that Congress has not impliedly required the President to comply with EO 13,337. Opp. 11-15; Order 28.  But in making this argument, TCE overlooks three salient and controlling facts.

First, for the last 51 years, as the modern era of cross-border commerce has emerged and grown, Congress has chosen not to disturb the comprehensive review of cross-border pipelines by the Secretary of State that was established by President Johnson in 1968, reaffirmed by President Bush in 2004, and consistently followed until President Trump defied this historical practice in 2019.  E.O. 11423 (33 Fed.Reg. 11741 (8/20/1986); EO 13,337 (69 Fed.Reg. 25299 (4/30/2004).  As Plaintiffs explained in their Response (Dkt. 80, 28-29) to this Court's Order, the district court in *Sierra Club v. Clinton,* 689 F.Supp.2d 1147 (D. Minn. 2010) agreed that "Congress's inaction [during this period of pipeline approvals pursuant to EO 11,423 and EO 13,337] suggests that Congress has accepted" the procedure prescribed by EO 13,337 that was used by the President in that case.  *Id*. at 1163.

Second, before 1968, TCE's claim to Congressional "consent[] for [the previous] 50 years to the President directly issuing permits for cross-border oil pipeline facilities" misstates that actual history.  Opp. 12.  During this period the few permits approved were issued individually rather than through any identified

procedure sufficiently consistent to suggest Congressional knowledge and acquiescence.   *See* Defendants' Responses to the Court's Questions in its December 20, 2019 Order (Dkt. 81, 8-11), and permits therein referenced.

Third, it is undisputed that throughout the 150-year history of border crossing permits, the President's authority to issue them existed only "in the absence of legislation" or other "congressional action."  Dkt. 81, 8-11; Dkt. 80, 28-29.  Here, Congress's specific direction that any Keystone permit must be issued "through the Secretary of State" constitutes precisely the sort of "congressional action" that overrides and displaces any dormant presidential authority to proceed otherwise.  TPTCCA §501(a), 125 Stat. at 1289.

## C.   THE 2019 PERMIT VIOLATED EO 13,337

The 2019 Permit violated EO 13,337 at least seven ways.  *See* First Amended Complaint (Dkt. 37) ¶¶ 81-87.  TCE fails to address any of them, asserting all are excused "as a matter of Law."  Opp. 15.   But its purported excuses are meritless.  First, it claims that EO 13,337 was unenforceable because it was "withdrawn."  Opp. 16.  Wrong.  It was in effect when Trump issued the 2019 Permit.  Regardless, Plaintiffs will seek leave to amend this lawsuit to challenge Trump's unconstitutional attempted revocation of EO 13,337 two weeks later.  84 Fed.Reg. 15,491 (4/10/19); *see* Dkt. 73, 37.

Second, TCE argues that Trump can amend executive orders "in any manner he chooses," simply by authorizing contrary action "notwithstanding" the order.

Opp. 16.  But the sole "authority" it cites is a bare *ipse dixit* from the President's own lawyers.  *Id.* (citing the President's Office of Legal Counsel).  TCE would replace the rule of law with its polar opposite:  unreviewable, retroactive fiat.  If executive orders can be eviscerated retroactively, without notice, without procedure, they become meaningless.  A nation founded on laws becomes lawless.

Third, TCE argues EO 13,337 is unenforceable because it implements no statutory policies.  Opp. 16-17.  Wrong again.  It provides for implementation and enforcement of this nation's bedrock environmental laws, like NEPA, the ESA and the CWA.

Last, it claims this Court may disregard *LCV* because the executive order Trump violated there implemented a statute.  Opp. 17-18.  But as noted, so does EO 13,337.  Where, as here, an executive order implements a statutory mandate, it is enforceable.  *Legal Aid Society of Alameda County v. Brennan*, 608 F.2d 1319, 1329-1331 (9th Cir. 1979); *City of Carmel-by-the-Sea v. U.S. Department of Transportation*, 123 F.3d 1142, 1166 (9th Cir. 1997); *Wyoming Wildlife Federation v. United States*, 792 F.2d 981, 985 (10th Cir. 1986) (enforcing EO 11,990 protecting wetlands); *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 591 (D.C. Cir. 2010) (same); *Citizens for Smart Growth v. Secretary of Dept. of Transp.*, 669 F.3d 1203, 1214 (11th Cir. 2012) (enforcing EO 11,988 and 11,990).

## IV.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM

TCE argues Plaintiffs will suffer no irreparable harm because Plaintiffs rely on harms "outside the 1.2-mile corridor," and Plaintiffs have not shown that irreparable harm is "likely" to occur from mowing, tree felling, global warming, construction worker activity, or bureaucratic momentum.  Opp. 18-26.  TCE is wrong on all counts.

Plaintiffs will suffer irreparable harms from the first 1.2 miles of Keystone, as well as from Keystone as a whole.  For example, "within its first 1.2 miles, Keystone crosses at least one unknown tributary of the East Fork of Whitewater Creek," which ultimately "flows into . . . the Missouri River . . . ., a watercourse used by Plaintiffs for drinking and farming among other uses;" and "[s]hould Keystone leak oil into a tributary of Whitewater Creek, the resulting contamination would flow downstream to the Missouri River," irreparably harming Plaintiffs.  FAC ¶ 16.  The Declaration of Bill Whitehead (Dkt. 27-26, ¶¶ 4-9) documents this harm.

Facilities necessary for construction of the border segment include worker camps "needed to support pipeline construction."  DOS5952, 5982, 5986.  Plaintiffs' declarations document the harms from these camps, including increased drug use and sexual violence that create social costs that will be borne by Plaintiffs' members.  *E.g.,* Declaration of Angeline Cheek (Dkt. 27-6) ¶¶ 1-29, Exhibits 1-2   TCE ignores this evidence.

TCE even claims the 2019 Permit "does not authorize any activities outside the border segment."  Opp. 19-21.  Not so.  The Permit defines its term "Facilities" to include the entire portion of the pipeline in the United States as set forth by TCE's May 4, 2012 application including any "land, structures, installations, or equipment appurtenant thereto."  84 Fed.Reg. 13101 (4/3/2019); Order 12.  The Permit grants TCE permission to "construct, connect, operate, and maintain pipeline *facilities*," so that TCE may "import . . . oil from Canada to the United States."  84 Fed.Reg. 13101.  The 1.2-mile border facilities and the balance of Keystone are two links in the same chain.  The 2019 Permit approves both.

Plaintiffs have shown that TCE's planned clearing and tree felling along Keystone's entire length, and resulting loss in bird and wildlife habitat, will harm them.   The Corrected Declaration of Kathleen Meyer shows she is an avid wildlife observer and bird watcher, whose interests will be harmed by Keystone's destruction of habitat.  Dkt. 65-2, ¶9.  The Declaration of Bill Whitehead shows that his community "live[s] close to the land and [its] lives are woven tightly with Earth's water, air, land, and animals as part of [their] identity."  Dkt. 27-26, ¶13.  The Declarations of Joye Braun (Dkt. 27-4, ¶¶ 2-11), Kandi White (Dkt. 27-24, ¶¶ 5-13),  Elizabeth Lone Eagle (Dkt. 27-15, ¶¶ 2-12) and LaVae High Elk Red Horse (Dkt. 27-19, ¶¶ 2-7) detail their close relationship with the lands, waters, unsurveyed cultural resources and wildlife that the Project threatens to harm.

This Court previously determined that man camps, which operate as small towns, would cause "significant impacts," and that their construction "risks the

potential for a 'bureaucratic steamroller'" undermining this Court's merits rulings. *IEN v. State*, 2019 WL 652416 *10 (February 2, 2019).  TCE argues that this "'bureaucratic momentum' theory no longer applies."  Opp. 26.  Not so for two reasons.  First, TCE wrongly presumes that the deficiencies this Court found in the Defendants' previous environmental review have been cured.[1]  The Defendants' most recent – but still deficient – FSEIS has not yet been brought before this Court, but it cannot excuse the improper 2019 Permit challenged by this action.

Second, Trump violated the requirements of EO 13,337 by evading State Department review and its required national interest determination.  The bureaucratic momentum from Project construction threatens the integrity of these required but omitted reviews, which include analysis and mitigation under NEPA and other laws Congress enacted to protect the public and its environment.  The threatened harm to the public's parallel rights under the Constitution's Commerce and Property Clauses that EO 13,337 implements is fundamental, and demands this Court's swift injunctive relief.

## V.     THE BALANCE OF HARM AND THE PUBLIC INTEREST FAVOR PLAINTIFFS

The public and Plaintiffs will suffer irreparable injuries if Keystone proceeds.  "When environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment."  *Save*

---

[1] TCE also incorrectly asserts that Plaintiffs will not challenge the SEIS.  They will.

*the Yaak Committee v. Block*, 840 F.2d 714, 722 (9th Cir. 1988); *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1230 (9th Cir. 1988); *Bob Marshall Alliance v. Lujan*, 804 F.Supp. 1292, 1295-1298 (D. Mont. 1992).  Plaintiffs have shown irreparable injury to the environment and Indigenous communities is likely absent a stay.

TCE completely ignores the significant harms that the environment, the public, and Plaintiffs would suffer if Keystone proceeds.  Opp 27-28.  Instead, TCE claims a delay in construction would "impose substantial economic costs." *Id.*  It misses the point.  Environmental harm from Keystone's construction is irreparable; TCE's delayed profit is not.

Furthermore, the alleged impacts that TCE claims may not even occur.  TCE may not proceed with Keystone if it cannot "get comfort that the risk-reward proposition is attractive."  Declaration of Stephan C. Volker, Exhibit 1, p. 16.  TCE cannot be harmed by delay in a Project it may never undertake.

And even if it decides to proceed, TCE plans to delay pipeline operation until after this litigation is resolved.  *Id.* (TCE intends to await receipt of additional permits and resolution of the "outstanding litigation in Federal Court in Montana, contesting the 2019 presidential permit" before moving forward with Keystone).  TCE cannot be harmed by a delay of its own making.

The public interest favors enforcement of environmental laws, not their evasion.  And it certainly does not favor fictitious financial burdens that may never

even occur.

## VI.   CONCLUSION

For these reasons, Plaintiffs' motion should be granted.

Dated:  February 18, 2020                 Respectfully submitted,

                                          PATTEN, PETERMAN, BEKKEDAHL &
                                          GREEN, PLLC

                                          s/ *James A. Patten*_____
                                          JAMES A. PATTEN

Dated:  February 18, 2020                 */s/ Stephan C. Volker*_____
                                          STEPHAN C. VOLKER
                                          Attorney for Plaintiffs
                                          INDIGENOUS ENVIRONMENTAL
                                          NETWORK AND NORTH COAST
                                          RIVERS ALLIANCE

## CERTIFICATE OF COMPLIANCE

Pursuant to Montana District Court, Civil Rule 7.1(d)(2)(B), I certify that

**PLAINTIFFS' REPLY TO TC ENERGY'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
AND APPLICATION FOR TEMPORARY RESTRAINING ORDER** contains

3,250 words, excluding caption and certificate of service, as counted by

WordPerfect X7, the word processing software used to prepare this brief.

*s/ Stephan C. Volker*

## CERTIFICATE OF SERVICE

I, Stephan C. Volker, am a citizen of the United States.  I am over the age of 18 years and not a party to this action.  My business address is the Law Offices of Stephan C. Volker, 1633 University Avenue, Berkeley, California 94703.

On February 18, 2020 I served the following documents by electronic filing with the Clerk of the Court using the CM/ECF system, which sends notification of such filing to the email addresses registered in the above entitled action:

**PLAINTIFFS' REPLY TO TC ENERGY'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I declare under penalty of perjury that the foregoing is true and correct.


s/ *Stephan C. Volker*
STEPHAN C. VOLKER (Pro Hac Vice)