MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Ph: (406) 247-4667; Fax: (406) 657-6058
mark.smith3@usdoj.gov

PRERAK SHAH
Deputy Assistant Attorney General

MARISSA A. PIROPATO (MA BAR 65160)
LUTHER L. HAJEK (CO Bar 44303)
United States Department of Justice
Environment and Natural Resources Division
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1376; Fax: (303) 844-1350
marissa.piropato@usdoj.gov
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK, *et al.*,<br><br>          Plaintiffs,<br>v.<br><br>PRESIDENT DONALD J. TRUMP, *et al.*,<br><br>          Defendants. | CV 19-28-GF-BMM<br><br>**DEFENDANTS' STATEMENT OF DISPUTED FACTS** |

1.    Plaintiff Indigenous Environmental Network is incorporated under the non-profit organizational name of Indigenous Educational Network of Turtle Island. Amended Complaint ¶ 28 (Dkt. 37).

RESPONSE: Federal Defendants lack insufficient information to admit or deny that Plaintiff Indigenous Environmental Network is incorporated under the non-profit organizational name of Indigenous Educational Network of Turtle Island.

2.    Plaintiff North Coast Rivers Alliance is an unincorporated association. Amended Complaint ¶ 29.

RESPONSE: Federal Defendants lack sufficient information to admit or deny that Plaintiff North Coast Rivers Alliance is an unincorporated association.

3.    Defendant-Intervenor TC Energy Corporation (formerly TransCanada Corporation) is a Canadian public company organized under the laws of Canada. Corporate Disclosure Statement (Dkt. 26).

RESPONSE: Undisputed.

4.    Defendant-Intervenor TransCanada Keystone Pipeline, LP ("Keystone") is a limited partnership, organized under the laws of the State of Delaware and owned by affiliates of TC Energy Corporation. *Id*.

RESPONSE: Undisputed.

5.      Keystone has plans to construct and operate an international oil pipeline

called the Keystone XL Project ("Keystone XL"). TransCanada Keystone

Pipeline, L.P. Application for Presidential Permit for the Keystone XL

Pipeline Project (Jan. 26, 2017) at 1 ("Presidential Permit Application")

(Dkt. 79-1, p. 3).

RESPONSE: Admit that Defendant-Intervenor TransCanada Keystone

Pipeline, LP ("Keystone") submitted a presidential permit application on

January 26, 2017 seeking authorization, among other things, to construct,

connect, operate and maintain pipeline facilities "for the importation of

crude oil, to be located at the international border between the United States

and Canada, at Phillips County, Montana."  TransCanada Keystone

Pipeline, L.P. Application for Presidential Permit for the Keystone XL

Pipeline Project (Jan. 26, 2017) at 1 ("Presidential Permit Application")

(Dkt. 79-1, p. 1).

6.      Keystone XL will extend from an oil supply hub near Hardisty, Alberta,

Canada to the northernmost point of the existing Keystone Pipeline Cushing

Extension at Steele City, Nebraska. Presidential Permit Application at 8

(Dkt. 79-1, p. 10).

RESPONSE:  Defendants admit that "Keystone proposes to construct and

operate a crude oil pipeline and related facilities from an oil supply hub

near Hardisty, Alberta, Canada to the northernmost point of the existing

Keystone Pipeline Cushing Extension at Steele City, Nebraska, which will provide access to existing refinery markets in the Texas Gulf Coast area." Presidential Permit Application at 8 (Dkt. 79-1).

7.  Keystone XL will cross the international border between Saskatchewan, Canada, and the United States near Morgan, in Phillips County, Montana. Presidential Permit Application at 6 (Dkt. 79-1, p. 8).

RESPONSE:  Undisputed.

8.  Keystone submitted an application to the Secretary of State on September 19, 2008 requesting authorization to construct, operate and maintain the Keystone XL pipeline and ancillary facilities at the United States-Canada border in Phillips County, Montana, pursuant to Executive Order 13,337. Presidential Permit Application at 2 (Dkt. 79-1, p. 4).

RESPONSE:  Defendants admit that Keystone submitted an application for a Presidential Permit for the Keystone XL Pipeline Project on September 19, 2008.  Presidential Permit Application at 2 (Dkt. 79-1). Defendants further admit that the U.S. Department of State reviewed TransCanada's application under Executive Order 13,337.

9.  On January 18, 2012, the President, "in furtherance of Executive Order 13337 of April 30, 2004" directed the Secretary of State to "submit the report to the Congress . . . and issue a denial of the Keystone XL pipeline permit application." 77 Fed.Reg. 5,679 (Feb. 3, 2012).

RESPONSE:  Defendants admit that on January 18, 2010, President Obama issued a memorandum to the U.S. Secretary of State that stated, among other things, "by the authority vested in me as President by the Constitution and the law of the United States, including section 201 of title 3, United States Code and in furtherance of Executive Order 13337 of April 30, 2004 to the extent compatible with this memorandum, I direct you to submit the report to the Congress as specified in section 501(b)(2) of the Temporary Payroll Tax Cut Continuation Act of 2011 and to issue a denial of the Keystone XL pipeline permit application." 77 Fed.Reg. 5,679 (Feb. 3, 2012).

10.    On May 4, 2012, Keystone submitted a new application to the Secretary of State for authorization to construct, operate and maintain the Keystone XL pipeline and ancillary facilities at the United States-Canada border in Phillips County, Montana. Presidential Permit Application at 3 (Dkt. 79-1, p. 5).

RESPONSE: Defendants admit that "[o]n May 4, 2012, Keystone submitted a new application for a Presidential Permit for a more limited Keystone XL Project, which included the former 'Steele City Segment' of the original project" and that the application sought, among other things, to construct, operate and maintain the Keystone XL pipeline and

5

ancillary facilities at the United States-Canada border in Phillips County,

Montana.  Presidential Permit Application at 3 (Dkt. 79-1).

11.    On November 3, 2015, the Secretary of State denied the application.

Presidential Permit Application at 4 (Dkt. 79-1, p. 6).

RESPONSE: Undisputed.

12.    On January 26, 2017, Keystone submitted an application to the Department

of State, pursuant to Executive Order 11,423, as amended, and Executive

Order 13,337, for a presidential permit "authorizing the construction,

connection, operation, and maintenance of pipeline facilities for the

importation of crude oil, to be located at the international border between the

United States and Canada, at Phillips County, Montana (the 'border crossing

facilities')." The Application states that "If this application is approved, the

Project will allow transportation of crude oil production from the Western

Canadian Sedimentary Basin ("WCSB") and the Bakken supply basin in

Montana and North Dakota, to a point located on the existing Keystone

Pipeline system at Steele City, Nebraska, which will allow for the delivery

of that production to existing refinery markets in the Texas Gulf Coast area."

Presidential Permit Application at 1. (Dkt. 79-1, p. 3).

RESPONSE: Defendants admit that on January 26, 2017, TransCanada

submitted an application to the Department of State, pursuant to Executive

Order 11,423, as amended, and Executive Order 13,337, for a presidential permit that, among other things, authorized "the construction, connection, operation, and maintenance of pipeline facilities for the importation of crude oil, to be located at the international border between the United States and Canada, at Phillips County, Montana (the 'border crossing facilities')." The remaining statements in Paragraph 12 are undisputed.

13.   On March 23, 2017, the Under Secretary of State for Political Affairs, exercising authority delegated by Executive Order 13,337 [sic], the January 24, 2017 Presidential Memorandum Regarding Construction of the Keystone XL Pipeline, and Department of State Delegation of Authority No. 118-2 of January 26, 2016, issued a permit "to construct, connect, operate and maintain facilities at the border of the United States of the United States and Canada at Morgan, Montana, for the import of crude oil from Canada to the United States." 82 Fed.Reg. 16,467 (Apr. 4, 2017) ("2017 Permit"). The 2017 Permit required TC Energy to "take all necessary measures to prevent or mitigate adverse impacts on or disruption of the human environment . . . includ[ing] the actions and obligations agreed to by permittee in the [Construction, Mitigation, and Reclamation Plan] and other mitigation, control plans, and special conditions found in the Final S[upplemental Environmental Impact Statement], including all Appendices as supplemented, all of which are appended to and made part of this permit, or

that are approved in the future by the Department or other relevant federal or

state agencies . . . ." 82 Fed.Reg. 16,467, 16,468 (Apr. 4, 2017).

RESPONSE:  Defendants admit that on March 23, 2017, the Under Secretary

of State for Political Affairs, exercising authority delegated by Executive

Order 13,337, the January 24, 2017 Presidential Memorandum Regarding

Construction of the Keystone XL Pipeline, and Department of State

Delegation of Authority No. 118-2 of January 26, 2006, issued a permit

among other things, "to construct, connect, operate and maintain facilities at

the border of the United States of the United States and Canada at Morgan,

Montana, for the import of crude oil from Canada to the United States." 82

Fed.Reg. 16,467 (Apr. 4, 2017) ("2017 Permit").  The remaining facts in

Paragraph 13 are undisputed.

14.   On March 29, 2019, the President issued a new presidential permit for

Keystone XL that superseded the Presidential permit that was issued by the

Under Secretary of State on March 23, 2017. 84 Fed.Reg. 13,101 (Apr. 3,

2019). It was not based upon any consultation with the Secretary of State,

any determination of the National Interest, nor any recommendations by

relevant agencies, as required by Executive Order 13,337.

RESPONSE:  Defendants admit that on March 29, 2019, the President, by

authority vested in him as President of the United States of America, issued a

new presidential permit for Keystone XL that superseded the Presidential permit that was issued by the Under Secretary of State on March 23, 2017. 84 Fed.Reg. 13,101 (Apr. 3, 2019).  Defendants deny the remaining statements in Paragraph 14 as disputed legal conclusions.  Defs.' Mem. of Law in Support of Summary Judgment ("Defs.' Br."), ECF No. 96, 22-24.

15.   The 2019 Permit would harm Plaintiffs' legally-protected interests in "concrete and particularized" respects, both at the 1.2-mile border-crossing and from the construction and operation of the "Facilities" described in the 2019 Permit – all 875 miles. *See* Declarations of Joye Braun (Dkt. 27-4), Angeline Cheek (Dkt. 27-6), Tom B.K. Goldtooth (Dkt. 27-10), Elizabeth Lone Eagle (Dkt. 27-15), LaVae High Elk Red Horse (Dkt. 27-19), Kandi White (Dkt. 27-24), Bill Whitehead (Dkt. 27-26), and Frank Egger (Dkt. 27-29), filed July 10, 2019, and Kathleen Meyer (Dkt. 65-2), filed October 10, 2019.

RESPONSE:  The "Facilities" described in the 2019 Permit only include the 1.2 mile border crossing, not "all 875 miles."  Defs. Statement of Undisputed Facts, ¶ 33, ECF No. 97.  Defendants deny that Plaintiffs have offered any legally-cognizable facts establishing that the 2019 Permit would harm any "legally-protect interests in 'concrete and particularized' respects" at the 1.2-mile border-crossing described in the 2019 Permit.   Defs.' Br. at 3-8.

16.    Construction and operation of the Project's 1.2-mile border crossing will
cause injury to Plaintiffs because this 1.2-mile segment "crosses at least one
unknown tributary of the East Fork of Whitewater Creek," which ultimately
"flows into . . . the Missouri River ......., a watercourse used by Plaintiffs for
drinking and farming among other uses;" and "[s]hould Keystone leak oil
into a tributary of Whitewater Creek, the resulting contamination would flow
downstream to the Missouri River," irreparably harming Plaintiffs.
Plaintiffs' First Amended Complaint (Dkt. 37) ¶ 16 (explaining the
hydrological context); Administrative Record in *IEN v. State*, CV 17-29-
GF-BMM (see Dkt. 111-112, 158, 169) at DOSKXLDMT0009652
("DOS9652") (FSEIS Appendix D, Table 1–"Waterbodies Crossed by the
Project in Montana" at Milepost 1.11) (documenting Keystone's crossing of
this tributary of the Missouri River); Whitehead Declaration (Dkt. 27-26) ¶¶
4-9 and Exhibit 1 (documenting resulting threat to the water supply for the
Fort Peck Indian Reservation).

RESPONSE: Defendants deny that "[c]onstruction and operation of the
Project's 1.2-mile border crossing will cause injury to Plaintiffs."  Defs.'
Br. at 3-8.   Defendants deny that this 1.2-mile segment "crosses at least
one unknown tributary of the East Fork of Whitewater Creek," which
ultimately "flows into . . . the Missouri River, a watercourse used by

Plaintiffs for drinking and farming among other uses;" and "[s]hould

Keystone leak oil into a tributary of Whitewater Creek, the resulting

contamination would flow downstream to the Missouri River," irreparably

harming Plaintiffs.  There is not a tributary in the 1.2 border crossing

segment.  United States Department of State - Bureau of Oceans and

International Environmental and Scientific Affairs. 2014.  Final

Supplemental Environmental Impact Statement for the Keystone XL

Project, Appendix D. Table 1; United States Geological Survey. Surface

Management Status 1:1000,000-Scale Topographic Map. Montana,

Whitewater. 2010. U.S. Department of the Interior. 2010.

17.  Construction and operation of the 1.2-mile border crossing will cause injury

to Plaintiffs because this construction requires the use of at least one man-

camp (DOS5952, 5982, 5986), which will harm their interests. *E.g.,* Cheek

Declaration (Dkt. 27-6) ¶¶ 1-29, Exhibits 1-2.

RESPONSE:   Federal Defendants deny that "construction and operation of

the 1.2-mile border crossing will cause injury to Plaintiffs . . . ." Defs.' Br. at

3-8.  Construction of the 1.2 border crossing will not require the construction

of a man camp. DOS0005946.

18.  Construction and operation of the remainder of the Project's 875 miles will

likewise harm Plaintiffs because, as with the 1.2-mile border segment, the

remainder of the Project poses significant oil spill risks that threaten the

water supply for the Fort Peck Reservation (Whitehead Declaration (Dkt.27-26), ¶¶ 4-13)) and the Cheyenne River Indian Reservation (Red Horse Declaration (Dkt. 27-19), ¶¶ 2-4).

RESPONSE:  Defendants deny that the Permit authorizes the Project's "875 miles" and that there is any related harm, Defs.' Statement of Undisputed Facts, ¶ 33, ECF No. 97, or that construction of the 1.2-mile border segment "poses significant oil spill risks that threaten the water supply for the For Construction and operation of the water supply of the Fort Peck Reservation." Responses #16, #15.

19.   The Project's risk of oil spills threatens downstream waterways throughout its route, harming plaintiffs' spiritual, recreational, and subsistence uses of these watersheds. Red Horse Declaration (Dkt. 27-19) ¶ 4; Lone Eagle.

RESPONSE:  Defendants deny the construction of the 1.2–mile border crossing creates a risk of oil spills or that it threatens downstream waterways throughout its route.  Defs.' Statement of Undisputed Facts, ¶ 33, ECF No. 97, Responses #18, #16, #15.

20.   Construction and operation of the Project would lead to habitat destruction, harming Plaintiffs' use and enjoyment of nature along the pipeline route. Meyer Declaration (Dkt. 65-2) ¶¶ 9-17; Red Horse Declaration (Dkt. 27-19) ¶ 4; Lone Eagle Declaration (Dkt. 27-15) ¶ 6; White Declaration (Dkt. 27-24) ¶¶ 5-13.

RESPONSE:  Defendants deny that construction and operation of the 1.2 border crossing will lead to habitat construction, harming Plaintiffs' use and enjoyment of nature along the pipeline route.  Defs.' Statement of Undisputed Facts, ¶ 33, ECF No. 97, Responses # 19, #18, #16. #15.

21.    Construction and operation of the Project would harm Plaintiffs' members' deep spiritual and cultural connections to the land, water, and wildlife throughout its route. Braun Declaration (Dkt. 27-4) ¶¶ 2-11; White Declaration (Dkt. 27-24) 5-13; Lone Eagle Declaration (Dkt. 27-15) ¶¶ 2-12; Red Horse Declaration (Dkt. 27-19) ¶¶ 2-7.

RESPONSE:  Defendants deny that construction and operation of the 1.2 border crossing would harm Plaintiffs' members "throughout its route." Defs.' Br. at 3-8, Defs.' Statement of Undisputed Facts, ¶ 33, ECF No. 97, Responses # 19, #18, #16, #15.

Respectfully submitted this 18th day of March, 2020,

MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Ph: (406) 247-4667; Fax: (406) 657-6058
mark.smith3@usdoj.gov

PRERAK SHAH

Deputy Assistant Attorney General

*/s/ Marissa Piropato*_____
MARISSA A. PIROPATO
LUTHER L. HAJEK (CO Bar 44303)
United States Department of Justice
Environment and Natural Resources Division
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1376; Fax: (303) 844-1350
marissa.piropato@usdoj.gov
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2020, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

_/s/ Marissa Piropato_____
MARISSA PIROPATO
U.S. Department of Justice