Jeffery J. Oven
Mark L. Stermitz
Jeffrey M. Roth
CROWLEY FLECK PLLP
490 North 31st Street, Ste. 500
Billings, MT  59103-2529
Telephone: 406-252-3441
Email: joven@crowleyfleck.com
        mstermitz@crowleyfleck.com
        jroth@crowleyfleck.com

Peter C. Whitfield
Joseph R. Guerra
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Telephone: 202-736-8000
Email:  pwhitfield @sidley.com
        jguerra@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP and TC Energy Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVERS ALLIANCE,<br><br>           Plaintiffs,<br><br>   vs.<br><br>PRESIDENT DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as U.S. Secretary of State; UNITED STATES ARMY CORPS OF ENGINEERS; LT. GENERAL TODD T. SEMONITE, Commanding General and Chief of Engineers; UNITED STATES FISH AND WILDLIFE SERVICE, a  federal agency; GREG SHEEHAN, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service; UNITED STATES BUREAU OF LAND MANAGEMENT, and DAVID BERNHARDT, in his official | CV 19-28-GF-BMM<br><br><br>**TC ENERGY CORPORATION AND TRANSCANADA KEYSTONE PIPELINE, LP'S RESPONSE TO COURT'S ORDER OF APRIL 7, 2021** |

capacity as Acting U.S. Secretary of the
Interior,

                     Defendants,

TRANSCANADA KEYSTONE PIPELINE,
LP, a Delaware limited partnership, and TC
ENERGY CORPORATION, a Canadian
Public company,

                     Defendant-Intervenors.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................3

    I.    Plaintiffs' Claims And Request For Relief Are Moot. ........................... 3

    II.    This Case Does Not Fall Within An Exception To The
        Mootness Doctrine............................................................................ 4

        A.    The "Voluntary Cessation" Exception Is Inapplicable..............5

        B.    The "Capable of Repetition/Evading Review" Exception
            Is Inapplicable. ...........................................................8

CONCLUSION ....................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)..................................................................................3

*Am. Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) ............................................................5, 6

*Ctr. for Biological Diversity v. Lohn*,
  511 F.3d 960 (9th Cir. 2007) ...........................................................3, 4, 9

*Grand Canyon Tr. v. U.S. Bureau of Reclamation*,
  691 F.3d 1008 (9th Cir. 2012) .................................................................4

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987)...................................................................................5

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016) ............................................................................9

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990)........................................................................3, 9, 10

*Rosemere Neighborhood Ass'n v. EPA*,
  581 F.3d 1169 (9th Cir. 2009) ............................................................5, 6

*United States v. Geophysical Corp. of Alaska*,
  732 F.2d 693 (9th Cir. 1984) ...................................................................4

*United States v. Or. State Med. Soc'y*,
  343 U.S. 326 (1952)..................................................................................5

## Statutes

Temporary Payroll Tax Cut Continuation Act of 2011, Pub. L. No.
  112-78, 125 Stat. 1280 .............................................................................7

**Other Authorities**

Executive Order 13990 of January 20, 2021, 86 Fed. Reg. 7037 (Jan.
25, 2021) ......................................................................................................1, 6

TC Energy News Release, *TC Energy Disappointed with Expected
Executive Action Revoking Keystone XL Presidential Permit* (Jan.
20, 2021) ...........................................................................................................1

**INTRODUCTION**

Defendant-Intervenors TransCanada Keystone Pipeline, L.P. and its parent TC Energy Corporation (jointly "TC Energy") file this brief in accordance with this Court's order of April 7, 2021.

Plaintiffs brought this action challenging the validity of a permit that former President Trump issued in March 2019 for the construction, operation, and maintenance of the 1.2 mile segment of the Keystone XL Pipeline that crosses the United States/Canada border in Montana ("the 2019 Permit"). On January 20, 2021, President Biden revoked that permit. *See* Executive Order No. (EO) 13990, § 6(a) 86 Fed. Reg. 7037, 7041 (Jan. 25, 2021). That same day, TC Energy announced that "advancement of the [KeystoneXL] project will be suspended," and the company would review the President's decision, "assess its implications, and consider its options."[1] On March 17, 2021, Texas and 20 other States filed suit in the Southern District of Texas challenging the legality of President Biden's revocation order. *See Texas v. Biden*, No: 3:21-cv-00065 (S.D. Tex. Mar, 17, 2021) (attached as Exhibit 1 to Dkt Entry 161) (the "*Texas* Compl."). TC Energy is not a

---

[1] *See* TC Energy News Release, *TC Energy Disappointed with Expected Executive Action Revoking Keystone XL Presidential Permit* (Jan. 20, 2021), https://www.tcenergy.com/announcements/2021-01-20-tc-energy-disappointed-with-expected-executive-action-revoking-keystone-xl-presidential-permit/

party to that suit, has not moved to intervene in it, and has not filed a challenge to the President's action. This Court has directed the parties to address whether this action is moot in light of the foregoing events.

At the outset, TC Energy states that no final decision has been made concerning the Keystone XL project as of the date of this filing. In addition to the considerable time and money that TC Energy has invested, the Government of Alberta invested over $1 billion US in the project in March 2020. Thus, any decision about the project is not TC Energy's alone to make. It is therefore consulting with the Government of Alberta and currently expects that a final decision will be made in June 2021.

No matter what that final decision is, however, this case is moot. All of plaintiffs' claims challenge the validity of a permit that no longer exists. Thus, no effective relief can be granted on plaintiffs' claims, and any resolution of them would be an opinion advising what the law would be in a hypothetical situation.

Plaintiffs have disputed these conclusions in a Ninth Circuit filing in which they opposed dismissal of their appeal as moot. *See IEN v. Biden*, No. 20-36068 (9th Cir. Apr. 7, 2021), DktEntry 22 at 11 ("Pls. App. Mootness Br.") The arguments plaintiffs made in that submission (and will presumably make again here) are mistaken. In fact, those arguments demonstrate that plaintiffs seek an impermissible advisory opinion in order to undermine the *Texas* Suit.

## ARGUMENT

**I.    Plaintiffs' Claims And Request For Relief Are Moot.**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). This means that federal courts have no power "to decide questions that cannot affect the rights of litigants in the case before them," or to issue "an opinion advising what the law would be upon a hypothetical state of facts." *Id.* It is, moreover, well established that "an actual controversy must be extant at all states of review." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Accordingly, a case becomes moot, and "no 'live' controversy remains," if "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963-64 (9th Cir. 2007). That is the situation here.

In their complaint, plaintiffs claim that the 2019 Permit should be set aside and declared "*ultra vires,*" and the construction and operation of Keystone XL authorized by the 2019 Permit should be enjoined, because President Trump allegedly lacked the authority to issue that permit. *See* First Amended Complaint, DktEntry 37 at 24-33. But the Court cannot issue that relief now, because the 2019 Permit "has 'evaporated or disappeared'" by virtue of its revocation by President Biden. *Ctr. for Biological Diversity*, 511 F.3d at 964. Plaintiffs are thus wrong in

claiming that President Biden's actions have not "remedied[] the separation of powers violations" that they challenged. Pls. App. Mootness Br. at 11. Revocation of an allegedly unlawful permit has the same practical effects as an injunction barring enforcement of or reliance on that permit.

Accordingly, the parties' disputes about whether the President lawfully issued the 2019 Permit and about what activity the 2019 Permit authorized no longer present a "live controversy" for which the court can provide "meaningful relief." *Id.* Plaintiffs' challenges to the 2019 Permit, and their claims for declaratory and injunctive relief, are thus moot. *See, e.g.*, *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1017 (9th Cir. 2012) (challenge to biological opinion mooted when it was revoked and replaced); *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984) (claim for declaration that permit provisions were invalid mooted when permit provisions expired); *Ctr. for Biological Diversity*, 511 F.3d at 964 (request for equitable relief against policy used to issue a proposed ruling that the Southern Resident killer whale should not be listed as an endangered species mooted when agency issued a final rule listing the whale as endangered).

## II.   This Case Does Not Fall Within An Exception To The Mootness Doctrine.

In opposing the government's mootness-based motion to dismiss their pending appeal, plaintiffs relied on cases involving the "voluntary cessation" and

"capable of repetition yet evading review" exceptions to mootness.[2] Presumably, they will do so again here. Neither exception is applicable here.

### A.   The "Voluntary Cessation" Exception Is Inapplicable.

Under the voluntary cessation doctrine, "the mere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see also Am. Cargo Transp., Inc.* 625 F.3d at 1179 (party must show "no reasonable ... expectation that the alleged violation will recur"). This doctrine "protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 67 (1987) (citation omitted).

---

[2] *See* Pls. App. Mootness Br. at 9 (citing *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (voluntary cessation); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1019 (9th Cir. 2012) (capable of repetition); and *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (voluntary cessation)). Plaintiffs also relied on *United States v. Oregon State Medical Society*, 343 U.S. 326, 334 (1952), but that case did not involve mootness. Instead, the Court affirmed dismissal of an antitrust case on the ground that the allegedly unlawful conduct had ceased years before the suit was brought.

The voluntary cessation doctrine is inapplicable here, because the 2019 Permit was not revoked "in response to pending litigation." *Rosemere*, 581 F.3d at 1173. It was revoked because President Biden took office with the stated goal of pursuing different policies on the economy and climate change. *See* Executive Order No. 13990 § 1, 86 Fed. Reg. at 7037 (stating new policy). The Executive Order that revokes the 2019 Permit emphasizes that "[l]eaving the Keystone XL pipeline permit in place would not be consistent with [the] Administration's economic and climate imperatives." *Id.*, § 6(d), 86 Fed. Reg. at 7041. This Court "presume[s] the government is acting in good faith," *Am. Cargo Transp., Inc.*, 625 F.3d at 1180, and there is no reason to think that the Executive Order's stated reason for the revocation is pretextual, or that the policy change and revocation of the 2019 Permit is temporary.

In an effort to overcome this problem, plaintiffs claim, remarkably, that, by revoking the 2019 Permit, defendants "repeated the same constitutional violations" President Trump allegedly committed by issuing that permit. Pls. App. Mootness Br. at 11. According to plaintiffs, both the issuance and revocation of the 2019 Permit "sidestep[ped] the procedures set forth in Executive Order 13337," which (according to plaintiffs) "Congress tacitly approved for years for the permitting of cross-border pipelines, and later expressly prescribed for the permitting of Keystone specifically when it adopted the Temporary Payroll Tax Cut

6

Continuation Act…." *Id.* at 3. This attempt to equate the claims in this case with those raised in the *Texas* Suit fails.

First, the States in the *Texas* Suit do not claim that Congress mandated compliance with the EO 13337 process and that revocation of the 2019 Permit "sidestep[ped]" or violated that process. Instead, they allege that "President Biden's decision to revoke the Keystone XL permit exceeded the scope of his authority under Article II of the Constitution" and that "Executive Order 13990 does not cite any statutory authority to revoke a transnational pipeline permit." *Texas* Compl. ¶ 66. The States cite EO 13337 only for historical context and to establish that the Secretary of State and other federal officials named in their complaint are responsible for effectuating permitting decisions, and thus are properly sued in their official capacities under the Administrative Procedure Act. *Texas* Compl. ¶¶ 8, 15, 28, 39, 46, 80, 101. Thus, compliance with EO 13337—the centerpiece of plaintiffs' asserted constitutional claims—is not the basis for the States' claim that revocation of the 2019 Permit was unconstitutional.

Second, the States' allegations concerning the Temporary Payroll Tax Cut Continuation Act (the 2011 Act) and its relevance to the Keystone XL project are the complete opposite of the claims plaintiffs have made in this case. The States argue that the 2011 Act gave President Obama two options—"to grant the permit or report negative recommendations to Congress within the prescribed time

period"—and, because he did neither, "Congress *authorized* the Keystone XL permit by operation of law." *Id.* ¶¶ 74-75 (emphasis added). In contrast, plaintiffs here argue that the 2011 Act *prohibited* President Trump from issuing the permit for Keystone XL.

Thus, although the States and plaintiffs here both rely on Congress' plenary authority over foreign and interstate commerce and both base arguments on the 2011 Act, the two suits quite obviously do not involve the "*same* constitutional violations." Pls. App. Mootness Br. at 11 (emphasis added). To the contrary, they challenge completely different actions (revocation/grant of a permit) based on completely different legal theories (no congressional authorization to revoke/violation of congressionally mandated process for granting) that depend on completely different readings of the 2011 Act (it approved Keystone XL by operation of law/it prohibited approval except through compliance with EO 13337).

### B.     The "Capable of Repetition/Evading Review" Exception Is Inapplicable.

Plaintiffs likewise cannot credibly claim that their challenge to the issuance of the presidential permit is one that is "capable of repetition yet evading review." That exception to mootness "applies only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining

party will be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (cleaned up). This is not such an exceptional case.

Plaintiffs claim that the *Texas* Suit makes it reasonable to expect that President Biden's revocation will be "declared void *ab initio*," Pls. App. Mootness Br. at 10. But even assuming, *arguendo*, that the States will prevail in that suit and that TC Energy would resume the Keystone XL project, that would mean only that plaintiffs "will be subject to the same purported injury again." *Ctr. for Biological Diversity*, 511 F.3d at 965. Any such renewed injury would not be "a type inherently limited in duration such that it is likely always to become moot before federal court litigation is completed." *Id.*

"In the normal course," a challenge to the issuance of a presidential permit "does not resolve itself without allowing sufficient time for appellate review." *Id.* (cleaned up) (application of policy used to determine whether to list a species as endangered is not "inherently limited in duration" such that it is capable of evading review); *see also, e.g., Lewis*, 491 U.S. at 481 ("the State's refusal to issue a bank charter" is not "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to evade review") (cleaned up). If the court in the *Texas* Suit were to declare the revocation of the 2019 Permit unlawful, and the 2019 Permit had any continuing relevance to construction or

operation of Keystone XL facilities in the future, there would be "ample time" for judicial review of any challenge plaintiffs may have to the permit. *Lewis*, 494 U.S. at 482.

Indeed, what is "exceptional" in this case is not the risk that plaintiffs will suffer a repetition of an unlawfully issued presidential permit that evades judicial review, but plaintiffs' theory for why this case should be kept alive. They argued in the Ninth Circuit that the Court should decide their constitutional challenges and "vacat[e]" a permit that has already been revoked, in order to "moot[] both the need for the [President Biden's revocation order] and, upon its rescission, the derivative *Texas* action challenging that order." Pls. App. Mootness Br. at 12. Courts, however, do not grant "relief" in order to "moot" actions by the President, much less to "moot" presidential actions that have already alleviated a plaintiffs' alleged injury. Nor do they decide issues in moot cases in order to moot other lawsuits that present live issues. In short, plaintiffs ask this Court to exceed its jurisdiction and issue an impermissible advisory opinion in order to interfere with other, ongoing litigation that plaintiffs dislike. The Court should not entertain this attempt to manipulate the judicial process.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the plaintiffs' lawsuit as moot.

Dated: May 5, 2021                    Respectfully Submitted,


CROWLEY FLECK PLLP                    SIDLEY AUSTIN LLP

/s/ Jeffery J. Oven_____             /s/ Peter C. Whitfield_____
Jeffery J. Oven                       Peter C. Whitfield
Mark L. Stermitz                      Joseph R. Guerra
Jeffrey M. Roth                       1501 K Street, N.W.
490 North 31st Street, Ste. 500       Washington, DC 20005
Billings, MT 59103-2529              Telephone: 202-736-8000
Telephone: 406-252-3441              Email: pwhitfield@sidley.com
Email: joven@crowleyfleck.com                jguerra@sidley.com
        mstermitz@crowleyfleck.com
        jroth@jcrowleyfleck.com

*Counsel for TransCanada Keystone Pipeline LP and TC Energy Corporation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief contains 2,367

words, excluding the caption, tables, and certificates of service and compliance.

*/s/ Jeffery J. Oven*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served today via the Court's

CM/ECF system on all counsel of record.

*/s/ Jeffery J. Oven*