MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Ph: (406) 247-4667; Fax: (406) 657-6058
mark.smith3@usdoj.gov

JEAN E. WILLIAMS
Acting Assistant Attorney General
LUTHER L. HAJEK (CO Bar 44303)
United States Department of Justice
Environment and Natural Resources Division
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1376; Fax: (303) 844-1350
luke.hajek@usdoj.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> PRESIDENT JOSEPH R. BIDEN, *et al*., <br><br> Defendants, <br><br> and <br><br> TRANSCANADA KEYSTONE PIPELINE, LP, *et al*., <br> Defendant-Intervenors. | CV 19-28-GF-BMM <br><br> **DEFENDANTS' BRIEF REGARDING MOOTNESS** |

## INTRODUCTION

This case is about a March 2019 permit issued by President Trump. That permit had authorized TransCanada Keystone Pipeline, L.P. and TC Energy Corporation (TC Energy) to build and operate the 1.2-mile segment of the Keystone XL oil pipeline that crosses the border between the United States and Canada. On January 20, 2021, however, President Biden issued Executive Order 13990, in which he revoked it. Because the President has revoked the permit, Plaintiffs' challenge to that permit no longer presents a live Article III "case or controversy," and there is no effective relief that this Court could award. Thus, the Court should dismiss this action as moot.

## BACKGROUND

In March 2019, then President Trump issued a permit authorizing the Keystone XL Pipeline to cross the international border between Canada and the United States. *See* Authorizing TransCanada Keystone Pipeline, L.P., To Construct, Operate, Connect, and Maintain Pipeline Facilities at the International Boundary Between the United States and Canada, 84 Fed. Reg. 13,101 (Mar. 29, 2019) ("2019 Permit"). Plaintiffs promptly filed this suit to challenge the 2019 Permit. *See* First Am. Compl. for Declaratory, Injunctive, and Mandamus Relief ¶¶ 60-88, ECF No. 37. Plaintiffs sought an order from the Court declaring that the 2019 Permit was legally deficient and enjoining any activities from taking place

pursuant to the Permit.  *See id.* at 32-33 (Prayer for Relief).  In its October 2020 opinion, which Plaintiffs appealed, the Court ruled that the scope of the 2019 Permit was limited to authorizing the construction and operation of pipeline facilities within the 1.2 mile border segment.  *See Indigenous Envtl. Network v. Trump*, No. 4:19-cv-28-BMM, 2020 WL 6119317, at *1-3 (D. Mont. Oct. 16, 2020), *appeal docketed,* No. 20-36068 (9th Cir. Dec. 14, 2020).  Based in part on the Court's resolution of the scope of the permit, the Court denied Plaintiffs' motion for a preliminary injunction.  *See id.* at *3-5.  Plaintiffs appealed that ruling, and the appeal is pending.

On January 20, 2021, President Biden took office and issued Executive Order 13990.  *See* Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, 86 Fed. Reg. 7037 (Jan. 20, 2021).  In Section 6 of the Order, the President revoked the 2019 Permit, finding that the Keystone XL Pipeline "disserves the U.S. national interest" because the "United States and the world face a climate crisis" and that "[l]eaving the Keystone XL pipeline permit in place would not be consistent with my Administration's economic and climate imperatives."  *Id*. at 7041; *see also id.* ("The Permit is hereby revoked in accordance with Article 1(1) of the Permit.").

# ARGUMENT

## I. President Biden's Revocation of the 2019 Permit Moots This Case

This case is moot because the 2019 Permit that is the subject of the lawsuit has been revoked and there is no effective relief that the Court can award.

Under Article III, § 2 of the Constitution, a federal court has jurisdiction only to address actual "Cases" or "Controversies." U.S. Const. Art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). The Ninth Circuit has long recognized that "when actions complained of have been completed or terminated, declaratory judgment and injunctive actions are precluded by the doctrine of mootness." *Pub. Utils. Comm'n v. FERC*, 100 F.3d 1451, 1458–59 (9th Cir. 1996) (holding that challenge to pipeline permit was rendered moot when permittee declined to accept permit); *see also Nevada v. United States*, 699 F.2d 486, 487 (9th Cir. 1983) (holding that challenge to Secretary of the Interior's moratorium on settlement of federal lands was rendered moot when that moratorium was rescinded); *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995) (holding that challenge to a lease sale rendered moot when the lease sale was cancelled).

In this case, the revocation of the 2019 Permit has mooted Plaintiffs' challenges to the permit. Once the President terminated the challenged Permit, it

"was the end of the 'case,' constitutionally and practically." *Nome Eskimo Cmty.*, 67 F.3d at 815. All "declaratory judgment and injunctive actions" challenging the 2019 Permit are now "precluded by the doctrine of mootness." *Nevada*, 699 F.2d at 487. Because the permit has been revoked, this case has "lost the essential elements of a justiciable controversy." *Arizonans for Official English*, 520 U.S. at 48. Indeed, when President Trump revoked the 2017 Permit and replaced it with the 2019 Permit, the Ninth Circuit (and these Plaintiffs) agreed that the appeals over the 2017 Permit were moot. *See Indigenous Envtl. Network*, 2019 WL 2542756, at *1. The circumstances here are similar, and the Court should reach the same result.

Moreover, the case is moot because there is no relief left for the Court to grant. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (a case becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"); *Pub. Utils. Comm'n*, 100 F.3d at 1458 ("The court must be able to grant effective relief, or it lacks jurisdiction . . . ."). Plaintiffs asked the Court to "enjoin" Defendants from "initiating any activities in furtherance of the Project that could result in any change or alteration of the physical environment unless and until defendants comply" with the Constitution and various federal laws. First Am. Compl. at 33. But there is no longer a permit

authorizing TC Energy to undertake any activities, including construction and operation, there is nothing left for this Court to enjoin.

Plaintiffs also requested that the Court declare the 2019 Permit "*ultra vires* and of no legal force and effect." First Am. Compl. at 33-34. A request for declaratory relief, however, cannot revive otherwise moot claims. When "there is no 'case' in the Constitutional sense of the word," the Court also "lacks the power to issue a declaratory judgment." *Nome Eskimo Community*, 67 F.3d at 816 (citation omitted); *see also Nevada*, 699 F.2d at 487 (the mootness doctrine precludes a declaratory judgment "when actions complained of have been completed or terminated"); *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (holding that a declaratory judgment "would serve no purpose" because the plaintiffs' objective had been achieved by the agency's listing of a species under the Endangered Species Act). Now that the 2019 Permit has been revoked, a judicial declaration about the constitutionality of the permit would be an advisory opinion. *See Friends of Everglades v. S. Florida Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) ("To decide a moot issue is to issue an advisory opinion, one unnecessary to the judicial business at hand and outside the authority of the Article III courts.") (citation omitted).

The existence of other authorizations relating to the Keystone XL Pipeline, such as the U.S. Bureau of Land Management's ("BLM") grant of a right-of-way,

5

does not affect the mootness of this case. Plaintiffs sought to supplement the claims in this case to add challenges to the BLM's right-of-way decision, but the Court denied that motion, ruling that the claims were untimely and could be brought in a separate case. *Indigenous Envtl. Network*, 2020 WL 6119317, at *6-7. Plaintiffs filed a separate case challenging the agency authorizations, and the government's response deadline in that case has been extended to allow the U.S. Department of the Interior to evaluate the right-of-way authorization. *See* Defs.' Third Mot. for an Extension of Time to file a Resp. to Pls.' Compl. & April 13, 2021 Order, *Indigenous Envtl. Network v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-115-BMM (D. Mont. April 13, 2021), ECF Nos. 10, 11. Thus, Plaintiffs are currently challenging other authorizations relating to the Keystone XL Pipeline in another case, and the Court need not keep this case alive in order to allow the other challenge to proceed.

Finally, because this case implicates serious constitutional questions, the court must give "close consideration" to whether the conflict is "really necessary." *Arizonans for Official English*, 520 U.S. at 75. Plaintiffs' Foreign Commerce Clause and Property Clause claims raise serious constitutional issues, including the reviewability of presidential action, separation of powers principles, and the nature and scope of Presidential power over matters implicating national security and foreign relations. As this Court recognized in its preliminary injunction opinion,

6

these are "novel and complex questions of constitutional law and statutory interpretation," *Indigenous Envtl. Network*, 2020 WL 6119317, at *1.

It would be wholly improper to decide those issues gratuitously, in the absence of a case or controversy. "Constitutional adjudication" is "a matter of 'great gravity and delicacy,'" and as a matter of policy and equitable discretion, the Court should "avoid passing prematurely on constitutional questions." *Kremens v. Bartley*, 431 U.S. 119, 128 (1977) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 345 (1936) and *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 756 n.8 (1976)); *see also Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). Under the constitutional avoidance doctrine, courts "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander*, 297 U.S. 288 at 347. These sound principles further counsel against adjudicating the merits of Plaintiffs' constitutional challenges to the rescinded Permit.

## II. No Exception to Mootness Applies

Although courts recognize exceptions to mootness, none applies here. It is "well settled," for example, "that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

This exception ensures that a defendant's voluntary cessation of an alleged illegal practice would not "leave the defendant free to return to his old ways." *Friends of the Earth v. Laidlaw Evntl. Servs. (TOC)*, 528 U.S. 167, 189 (2000) (citation and internal alterations omitted). The voluntary cessation exception does not apply here because there can be no reasonable expectation that, having revoked the permit, President Biden will reverse course and issue it again.

The Ninth Circuit, sitting en banc, recently reaffirmed that it treats the voluntary cessation of challenged conduct by government officials with "more solicitude" than similar action by private parties. *Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (internal quotations and citation omitted); *see id*. at 1199 (joining a majority of circuits in "concluding that legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party"). The court held that repeal, amendment, or expiration of legislation creates a presumption that a challenge to the legislation is moot unless the challenging party shows a "reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*. This "reasonable expectation of reenactment" must be "founded in the record," not "on speculation alone." *Id*.

This presumption of mootness applies equally to the Executive Branch. *See Oregon Nat. Res. Council v. Grossarth*, 979 F.2d 1377, 1379-80 (9th Cir. 1992)

(finding no "reasonable expectation" that a timber sale would recur once the agency had halted it, and the mere possibility of a future sale was not enough to avoid mootness); *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1094-95 (9th Cir. 2003) (holding that a challenge to a Forest Service policy was moot once the agency had issued an official clarification, even though the agency retained the authority to return to the old policy). As with the Executive Branch as a whole, the President enjoys a presumption that he is acting in good faith. *See American Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). And as the full D.C. Circuit observed when considering how the voluntary cessation exception should apply to government actions: "At least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose." *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc).

No evidence rebuts the presumption of mootness. This is not a case in which the President withdrew a permit just to reissue it on another day. Rather, the President determined that the United States and the world face a climate crisis and "[l]eaving the Keystone XL pipeline permit in place would not be consistent with [the new] Administration's economic and climate imperatives." 86 Fed. Reg. at

9

7,041. The President reversed his predecessor's action not to evade judicial review, but because he found that the Keystone XL Pipeline "disserves the U.S. national interest." *Id*. The record offers no basis to conclude that the specific "alleged wrongs" challenged here will ever be repeated in a manner that could implicate Plaintiffs' alleged interests. *Nevada*, 699 F.2d at 487-88. Any such future action is too speculative to require this Court to consider Plaintiffs' constitutional claims.

This is also not the type of case that is capable of repetition while evading review. *See, e.g.*, *Public Utilities Comm'n*, 100 F.3d at 1459-60. This exception applies in "exceptional circumstances," *id*. at 1459 (citation omitted), and only where there is both (1) "a reasonable expectation that the same complaining party will be subject to the same injury again," and (2) an injury that is so "inherently limited in duration" that "it is likely always to become moot before federal court litigation is completed," *Ctr. for Biological Diversity*, 511 F.3d at 965 (cleaned up). As discussed below, this case satisfies neither element.

First, there is no "reasonable expectation" that the President will issue another permit for the Keystone XL Pipeline. As discussed above, the President revoked the permit based on his view that the permit would be inconsistent with the administration's goal of combatting climate change and therefore disserved the

national interest. There can be no reasonable expectation that, having staked out this position, the President will change course and re-issue the permit.

Second, the 2019 Permit was not so "inherently limited in duration" that it would evade review. The permit contained no expiration date, although it did provide that if construction were not commenced within five years, the permit would expire. *See* 84 Fed. Reg. 13, 103 (Permit Article 10). Even looking at just the five-year period, such a duration is not so limited that the exception would apply. *See Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1018 (9th Cir. 2012) ("We have repeatedly held that similar actions lasting only one or two years evade review."); *Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995) (four years is "more than enough time for litigants to obtain judicial review").

Because neither requirement is met, the exception for actions that are capable of repetition yet evade review does not apply.

### III. The Filing of the *Texas* Case Challenging President Biden's Revocation of the Permit Does Not Create a Live Controversy in This Case

The filing of the *Texas* case does not alter the mootness of this case. In that case, a coalition of states challenge President' Biden's revocation of the 2019 Permit for the Keystone XL Pipeline. *See* Compl., *Texas v. Biden*, No. 3:21-cv-65 (S.D. Tex.), ECF No. 1, attached as Ex. 1. They allege, *inter alia*, that President Biden lacked the constitutional authority to revoke the 2019 Permit, that doing so

11

violated the separation of powers doctrine and the non-delegation doctrine, and that unspecified actions that taken by agency officials in light of revocation of the permit are, or would be, unlawful. *See id.* ¶¶ 60-104. They seek an injunction preventing the government from "taking any action to enforce, implement, or otherwise put into effect" the revocation of the 2019 Permit. *Id.* at 38. Notwithstanding the existence of the *Texas* case, which the United States will vigorously defend, this case is still moot.

The fact that the *Texas* plaintiffs seek to overturn President Biden's revocation of the 2019 Permit does not change the fact that this case has "lost its character as a present, live controversy of the kind that must exist" if the Court is to "avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48 (1969). The case is not saved from mootness merely because the revocation itself may be overturned in a different lawsuit. *See Jackson v. Abercrombie*, 585 F. App'x 413 (9th Cir. 2014). In *Jackson*, the Ninth Circuit held that a challenge to Hawai'i's ban on same-sex marriage became moot when the State enacted a new law allowing those marriages. *Id.* at *414. In so holding, the court rejected the argument that the case was not moot because of a lawsuit challenging the new law: The "mere fact that someone has challenged" the law "in independent litigation does not defeat mootness." *Id*.

Other circuits likewise have refused attempts by litigants to "play off one court system against another." *Miller v. Benson*, 68 F.3d 163, 165 (7th Cir. 1995); *see also Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1184 (10th Cir. 2000) ("Even if the timing of Common Cause's lawsuit is purely coincidental, we do not believe that the mere filing of a lawsuit is sufficient to resurrect Article III jurisdiction over the repealed statutes."). This is because federal courts "are not interested in predicting the outcome or consequences of proceedings in another court, nor in retaining jurisdiction as an opportunity for collateral attack on another court's eventual judgment." 13C Wright & Miller, Fed. Prac. & Proc. Juris. § 3533.6 (3d ed.); *but see Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020).[1]

The D.C. Circuit has rejected the argument that a case is not moot based on a potential ruling in another case and explained its conclusion at some length. The court dismissed the petitioners' argument that they were "under a continuing threat of injury" from California's greenhouse gas regulations because if the federal regulations were "invalidated in a pending court case, the California standards could be reimposed." *U.S. Chamber of Commerce v. EPA*, 642 F.3d 192, 208

---

[1] In *Ohio*, the Sixth Circuit held that a case was not moot based on the mere "possibility" that a district court might issue a nationwide injunction of a subsequent rule, which would have the effect of reinstating the rule challenged in the case. *Ohio*, 969 F.3d at 310. There is little analysis to support the court's conclusion, and the decision appears to be an outlier.

(D.C. Cir. 2011). As the court explained, "the federal regulations are currently in force, subject to the usual presumption of validity, and at this point the possibility that they may be invalidated is nothing more than speculation." *Id*. The court found no "way in which we can realistically move that possibility out of speculation's realm." *Id*. And it was "disinclined to conduct the kind of 'trial within a trial' necessary to assess the likelihood that a challenge to the federal standards would prevail." *Id*.

As in *U.S. Chamber of Commerce*, the President's action revoking the 2019 Permit is entitled to a presumption of validity. And the possibility that the court in the *Texas* case *could* invalidate the revocation is squarely within "speculation's realm." 642 F.3d at 208. Plaintiffs may argue that the *Texas* court could declare the revocation of the 2019 Permit void, thus clearing the way for TC Energy to resume construction and operation of the border segment. But the merits of the *Texas* case strongly support its dismissal. As Defendants have argued in this Court, the President's authority to grant or deny a border-crossing permit for an oil pipeline is well grounded in the Constitution and longstanding practice. *See* Defs.' Mem. in Resp. to the Court's Oct. 16, 2020 Order, ECF No. 150. Further, the *Texas* court may not need to decide the underlying constitutional questions because the case may be dismissed on jurisdictional grounds, and if the court reaches the merits, the permit itself expressly provided that it "may be terminated, revoked, or

14

amended at any time at the sole discretion of the President of the United States." *See* 2019 Permit, 84 Fed. Reg. at 13,101 (Permit Article 1(1)).  At any rate, the critical point is that the possible outcomes of other cases cannot sustain Article III jurisdiction in this case.

Plaintiffs also may argue that TC Energy has not announced it is giving up on the project entirely, although it has suspended work on construction of the pipeline.  *See* Defs.' Status Report in Resp. to the Court's Feb. 17, 2021 Order at 2, ECF No. 159.  This Court's jurisdiction, however, depends on the changed status of the permit, not on whether TC Energy has made an official business decision to abandon the project.  Regardless of TC Energy's plans, the 2019 Permit is revoked and TC Energy is no longer allowed to carry out activities authorized by that permit.

Finally, Plaintiffs' concern that the *Texas* case could revive the 2019 Permit can be addressed by an order dismissing Plaintiffs' claims without prejudice to their being refiled if the circumstances regarding the permit change.  *See Alaska v. EPA*, 521 F.2d 842, 844 (9th Cir. 1975) (dismissing claims without prejudice to refiling them if the EPA were to lift the suspension of challenged regulation).  If the *Texas* case revives the 2019 Permit and TC Energy *then* decides to proceed with the project, Plaintiffs may refile this lawsuit.  But such an outcome at this

point is speculative, and such speculation does not create a live case or controversy in this case.

## CONCLUSION

For the foregoing reasons, this case should be dismissed as moot.

Respectfully submitted this 5th day of May, 2021,

> MARK STEGER SMITH
> Assistant U.S. Attorney
> U.S. Attorney's Office
> 2601 Second Avenue North, Suite 3200
> Billings, MT 59101
> Ph: (406) 247-4667; Fax: (406) 657-6058
> mark.smith3@usdoj.gov
>
> JEAN E. WILLIAMS
> Acting Assistant Attorney General
>
> */s/ Luther L. Hajek*
> LUTHER L. HAJEK (CO Bar 44303)
> United States Department of Justice
> Environment and Natural Resources Division
> 999 18th St., South Terrace, Suite 370
> Denver, CO 80202
> Ph: (303) 844-1376; Fax: (303) 844-1350
> luke.hajek@usdoj.gov
>
> *Attorneys for Defendants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the foregoing brief is proportionately spaced, has a typeface of 14 points, and contains 3,680 words, excluding the tables, caption, signature, certificate of compliance, and certificate of service.

<i>/s/ Luther L. Hajek</i>  
LUTHER L. HAJEK  
U.S. Department of Justice

# CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2021, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

>*/s/ Luther L. Hajek*
>LUTHER L. HAJEK
>U.S. Department of Justice