JAMES A. PATTEN
PATTEN, PETERMAN,
BEKKEDAHL & GREEN,
    PLLC
Suite 300, The Fratt Building
2817 Second Avenue North
Billings, MT 59101-2041
Telephone:  (406) 252-8500
Facsimile:  (406) 294-9500
email:  apatten@ppbglaw.com

Attorneys for Plaintiffs
INDIGENOUS
ENVIRONMENTAL
NETWORK and NORTH
COAST RIVERS ALLIANCE

STEPHAN C. VOLKER (Pro hac vice)
ALEXIS E. KRIEG (Pro hac vice)
STEPHANIE L. CLARKE (Pro hac vice)
JAMEY M.B. VOLKER (Pro hac vice)
LAW OFFICES OF STEPHAN C. VOLKER
1633 University Avenue
Berkeley, California 94703-1424
Telephone:  (510) 496-0600
Facsimile:  (510) 845-1255
email:    svolker@volkerlaw.com
          akrieg@volkerlaw.com
          sclarke@volkerlaw.com
          jvolker@volkerlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVERS ALLIANCE, | ) ) ) | Civ. No. CV 19-28-GF-BMM |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' MEMORANDUM RE MOOTNESS** |
| vs. | ) ) | |
| PRESIDENT JOSEPH R. BIDEN, JR; UNITED STATES DEPARTMENT OF STATE; ANTONY J. BLINKEN, in his official capacity as U.S. Secretary of State; UNITED STATES ARMY CORPS OF ENGINEERS; LT. GENERAL SCOTT A. SPELLMON, Commanding General and Chief of Engineers; UNITED STATES FISH AND WILDLIFE SERVICE, a federal agency; MARTHA WILLIAMS, in her | ) ) ) ) ) ) ) ) ) ) ) ) | **Judge:  Hon. Brian M. Morris** |

official capacity as Principal Deputy )
Director acting as Director of the U.S. Fish )
and Wildlife Service; UNITED STATES )
BUREAU OF LAND MANAGEMENT; )
and DEBRA A. HAALAND, in her official )
capacity as U.S. Secretary of the Interior, )
  )
   Defendants, )
  )
TRANSCANADA KEYSTONE PIPELINE, )
LP, a Delaware limited partnership, and TC )
ENERGY CORPORATION, a Canadian )
Public Company, )
  )
   Defendant-Intervenors. )
_____ )

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**SUMMARY OF ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**I.    THE FEDERAL DEFENDANTS CANNOT CARRY THEIR
       "HEAVY BURDEN" TO PROVE  THEY HAVE
       PERMANENTLY CEASED THEIR UNLAWFUL CONDUCT.**. . . . . 7

**II.   21 STATES HAVE SUED TO OVERTURN PRESIDENT
       BIDEN'S KEYSTONE REVOCATION ORDER AS
       UNCONSTITUTIONAL, AND REQUESTED PRELIMINARY
       AND PERMANENT INJUNCTIVE RELIEF TO BLOCK IT.**. . . . . . 8

**III.  HAVING SPENT MORE THAN $2 BILLION TO DATE,
       TRANSCANADA INTENDS TO COMPLETE AND OPERATE
       KEYSTONE IF THE *TEXAS v. BIDEN* CASE SUCCEEDS.**. . . . . . . 11

**IV.   TRANSCANADA IS LOBBYING THE BIDEN
       ADMINISTRATION TO REVERSE ITS REVOCATION
       ORDER.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**V.    THE LONG-TERM EFFECTS OF TRANSCANADA'S
       PROJECT HAVE YET TO BE MITIGATED; AS LONG AS
       THEY REMAIN THIS CASE IS NOT MOOT.**. . . . . . . . . . . . . . . . 18

**VI.   NONE OF DEFENDANTS' AUTHORITIES ARE APPOSITE.**. . . . . 21

       **A.    THE REVOCATION ORDER MAY BE DECLARED
              VOID.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       **B.    NO CASE RECOGNIZES "TEMPORARY" MOOTNESS.** . . . 22

       **C.    NONE OF THE FEDERAL DEFENDANTS' CASES
              SUPPORTS MOOTNESS.** . . . . . . . . . . . . . . . . . . . . . . . . . 23

**VII.  THERE ARE AT LEAST THREE COMPELLING REASONS
WHY THIS COURT MUST REJECT THE FEDERAL
DEFENDANTS' MERITLESS MOOTNESS CLAIM AND
RESTORE THIS CASE TO THE COURT'S ACTIVE
CALENDAR**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    **A.  THE FEDERAL DEFENDANTS CANNOT CARRY THEIR
"HEAVY BURDEN" OF DEMONSTRATING MOOTNESS
IN THE FACE OF THEIR CONTINUING
CONSTITUTIONAL VIOLATIONS**. . . . . . . . . . . . . . . . . . . . . . . 33

    **B.  THIS COURT SHOULD NOT ALLOW THE *TEXAS V.
BIDEN* LITIGATION TO DISPLACE THIS COURT'S
RIGHTFUL PRIORITY IN DECIDING THE SAME
CONSTITUTIONAL ISSUES TO PREVENT HARM TO
PLAINTIFFS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    **C.  THIS COURT SHOULD PREVENT IRREPARABLE
HARM**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

## CASES

*American Cargo Transport, Inc. v. United States*
  625 F.3d 1176 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 8, 16, 18, 23, 31, 32

*Arizonans for Official English v. Arizona*
  520 U.S. 43 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ashwander v. TVA*
  297 U.S. 288 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Board of Trustees of Glazing Health & Welfare Trust v. Chambers*
  941 F.3d 1195 (9th Cir. 2019) (en banc). . . . . . . . . . . . . . . . . . . . . . 7, 22

*Campbell-Ewald Co. v. Gomez*
  577 U.S. 153 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Center for Biological Diversity v. Lohn*
  511 F.3d 960 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*City of Mesquite v. Aladdin's Castle, Inc.*
  455 U.S. 283 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Clarke v. United States*
  915 F.2d 699 (D.C. Cir. 1990) (en banc). . . . . . . . . . . . . . . . . . . . . . . . 31

*Deutsche Bank National Trust Co. v. FDIC*
  744 F.3d 1124 (9th  Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

*Forest Guardians v. U.S. Forest Service*
  329 F.3d 1089 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Friends of Everglades v. South Florida Water Management District*
  570 F.3d 1210 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Idaho Department of Fish & Game v. National Marine Fisheries Service*
  56 F.3d 1071 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Burell*
  415 F.3d 994 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Karuk Tribe of California v. U.S. Forest Service*
    681 F.3d 1006 (9th Cir. 2012)............................ *passim*

*Kohn Law Group v. Auto Parts Mfg. Mississippi*
    787 F.3d 1237 (9th Cir. 2015).................................. 34

*Kremens v. Bartley*
    431 U.S. 119 (1977)............................................ 27

*Mayor of Philadelphia v. Educational Equality League*
    415 U.S. 605 (1974)............................................ 28

*Natural Resources Defense Council v. County of Los Angeles*
    840 F.3d 1098 (9th Cir. 2016)........................... 5, 7, 33

*Nevada v. United States*
    699 F.2d 486 (9th Cir. 1983)................................. 24

*Nome Eskimo Community v. Babbitt*
    67 F.3d 813 (9th Cir. 1995).................................. 26

*Oregon Natural Resources  Council v. Grossarth*
    979 F.2d 1377 (9th Cir. 1992)............................... 30

*Public Utilities Commission v. FERC*
    100 F.3d 1451 (9th Cir. 1996)............................... 25

*United States v. Oregon State Medical Society*
    343 U.S. 326 (1952)............................. 7, 15, 22, 28

## UNITED STATES CONSTITUTION

Article I, Section 8, Clause 3...................................... *passim*

Article IV, Section 3, Clause 2 ................................... *passim*

## UNITED STATES CODE

Title 2

    § 1604............................................................ 17

# RULES

Federal Rules of Evidence

    Rule 201(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# OTHER AUTHORITIES

Temporary Payroll Tax Cut Continuation Act of 2011
    Public Law No. 112-78, § 501(a), 125 Stat. 1280 . . . . . . . . . . . . . . . . . . . 9

69 Fed.Reg. 25299-25301 (April 30, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

86 Fed.Reg. 7037-4043 (Jan. 25, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**INTRODUCTION**

Indigenous Environmental Network ("IEN") and North Coast Rivers Alliance ("NCRA") (collectively, "Plaintiffs") brought this action against Defendants President Donald J. Trump and various government agencies and officials in their official capacities ("Federal Defendants") on April 5, 2019 to overturn their approval of the Keystone XL Pipeline ("Keystone" or "Project"). Plaintiffs alleged that President Trump violated the Property Clause of the U.S. Constitution, the Commerce Clause of the U.S. Constitution, and Executive Order 13,337 when he issued a Presidential Permit on March 29, 2019 ("2019 Permit") to Defendant-Intervenors TransCanada Keystone Pipeline, LP and TC Energy Corporation (collectively, "TransCanada") to "construct, connect, operate and maintain" the Project across the U.S.-Canadian border.

On January 20, 2021 President Joseph R. Biden signed Executive Order 13,990 "("Revocation Order") to revoke the 2019 Permit pursuant to Article 1(1) of that permit.  ECF 15, Att. A, §6; 86 Fed. Reg. 7037, 7041 (January 25, 2021). President Biden's revocation noted that the 2019 Permit included an express condition that the President could revoke that permit at "the President's sole discretion."   *Id*.  However, President Biden's Revocation Order does not state that the 2019 Permit was issued unlawfully, let alone unconstitutionally.  Instead, it states only that its issuance "disserves the U.S. national interest."  86 Fed.Reg. 7037.  Nothing in his Revocation Order prevents President Biden from exercising the identical "sole discretion" claimed in that order (and in the 2019 Permit) to

- 1 -

unilaterally reissue the 2019 Permit.

On July 10, 2019 Plaintiffs filed their Motion for a Preliminary Injunction to prevent the Federal Defendants and TransCanada from constructing and operating the Project as allowed by the 2019 Permit to prevent irreparable environmental and cultural harm.  ECF 27.  On January 31, 2020 and again on April 14, 2020, Plaintiffs renewed their Motion for a Preliminary Injunction.  ECF 82, 136.  On October 16, 2020 this Court issued an Order denying Plaintiffs' Motion for a Preliminary Injunction.  ECF 147.  On December 11, 2020 Plaintiffs filed their Notice of Appeal from that Order (ECF 151) and on January 8, 2021, Plaintiffs filed their Appellants' Opening Brief  and Appellants' Excerpts of Record (Ninth Circuit No. 20-36068, Dkt. Entries 10 and 11, respectively).  On January 29, 2021 Federal Defendants and TransCanada (collectively, "Defendants") moved for a 31-day extension, from February 5 to March 8, 2021, "to file their answering brief[s] in this case," which Plaintiffs opposed.  Ninth Circuit No. 20-36068, Dkt. Entries 15, 16, 17.

On February 24, 2021, instead of filing the "answering brief" for which they had sought the extension, the Federal Defendants filed a Motion to Dismiss Plaintiffs' appeal on the grounds of mootness.  *Id*., Dkt. Entry 19.  Notably, TransCanada did not join in, and instead took "no position on," the motion.  *Id.* at p. 1.  The Federal Defendants' Motion to Dismiss requests dismissal of Plaintiffs' interlocutory  appeal on the grounds (1) "[t]his appeal and Plaintiffs' case [below] are moot because the President revoked the 2019 Permit," and  (2) "[n]o exception

to mootness applies." *Id*. at pp. 6-15.  Based on this premise, the Federal

Defendants asserted that the Ninth Circuit "should vacate the decisions below and

remand with instructions to dismiss the case." *Id.* at p. 16.  On April 7, 2021,

Plaintiffs filed their Opposition to the Federal Defendants' Motion to Dismiss and

also filed their related Motion for Judicial Notice.  *Id*., Dkt. Entries 22, 23.  On

April 23, the Federal Defendants filed their Reply.  *Id.*, Dkt. Entry 24.  To date, the

Ninth Circuit has taken no action on the Federal Defendants' Motion to Dismiss.

Plaintiffs' interlocutory appeal, although arising from this Court's denial of

preliminary injunctive relief, raises fundamental and recurring separation-of-

powers issues that question the 2019 Permit's underlying constitutionality, and

apply as well to President Biden's recent Revocation Order.  The recurring nature

of the issues Plaintiffs raised in this action and their pending appeal is reflected in

the filing on March 17, 2021, by the State of Texas and 20 other states, of a

Complaint in the United States District Court for the Southern District of Texas

challenging President Biden's Revocation Order on grounds similar to those

Plaintiffs raised herein.  *State of Texas et al. v. Joseph r. Biden, Jr.* (*"Texas v.

Biden"*), Case No. 3:21-cv-65 (S.D. Tex), attached as Exhibit 1 to Plaintiffs'

accompanying Request for Judicial Notice ("RJN").

In addition to the instant action that challenges President Trump's 2019

Permit primarily on constitutional grounds, Plaintiffs also filed, on December 4,

2020, a second action*, Indigenous Environmental Network v. United States

Bureau of Land Management* (*"IEN v. BLM"*), Civ. No. 4:20-cv-00115-BMM), to

overturn additional approvals of the Project by the Federal Defendants.  *IEN v. BLM* challenges on statutory and regulatory grounds subsequent decisions by officials and agencies of the United States that implement the 2019 Permit. In this second action, Plaintiffs served Federal Defendants on December 14, 2020, and thus their deadline for filing a response was February 12, 2021.  On February 8, 2021, this Court granted the Federal Defendants' unopposed motion for a 31-day extension of time, to Monday, March 15, 2021, to file their response.  ECF 7. On March 11, 2021, the Federal Defendants filed their Motion for Second Extension of Time to File a Response to Plaintiffs' Complaint.  ECF 8.  By Order filed later that day, this Court granted the motion, extending the Federal Defendants' time for response to April 14, 2021.  ECF 9.

To Plaintiffs' knowledge, to date the Federal Defendants have taken no publicly-noticed action to rescind any of the approvals they had issued to implement the 2019 Permit and that Plaintiffs challenge in *IEN v. BLM*. Accordingly, on April 2, 2021, Plaintiffs filed a Status Report in this action in which they requested "dissolution of the stay in this action, and a scheduling order in the second action [*IEN v. BLM*] directing [the Federal] Defendants' prompt preparation of the Administrative Record underlying their challenged approvals, followed by expeditious merits briefing and hearing."  ECF 161.  On April 7, 2021, this Court issued an Order directing the parties to file simultaneous briefing by May 5, 2021 on whether this action is moot.  ECF 162.

- 4 -

## SUMMARY OF ARGUMENT

This case is not moot for at least five interrelated reasons.

*First*, in order to demonstrate grounds for this Court to dismiss this case as moot, the Federal Defendants bear a "heavy burden" to prove they have permanently ceased the unlawful conduct that prompted this litigation. *Natural Resources Defense Council v. County of Los Angeles* ("*County of Los Angeles*"), 840 F.3d 1098, 1102 (9th Cir. 2016). Under the facts as they presently exist, the Federal Defendants cannot possibly make this required showing.

*Second*, the validity of the President's Revocation Order has been challenged in federal court and may be overturned in short order. As noted, that Order has been attacked by 21 states in *Texas v. Biden*. If that lawsuit succeeds, then President Biden's Revocation Order is null and void. Moreover, that lawsuit raises separation of powers grounds similar to those alleged in this case, underscoring the need for this Court to promptly resolve the long-pending separation of powers issues that Plaintiffs raised in this case on April 5, 2019, nearly *two years* before *Texas v. Biden* was filed.

*Third,* it is clear that the developer of Keystone, TransCanada, has no intention of now abandoning this Project. On April 2, 2021 TransCanada filed its Status Report in this Court (ECF 160) stating to the contrary that "it is still assessing and considering its next steps." *Id*. at 2. Translation: if *Texas v. Biden* succeeds, TransCanada will proceed with its Project.

*Fourth*, TransCanada is now actively lobbying the Biden Administration to

- 5 -

reverse its Revocation Order.  If it succeeds, TransCanada will immediately resume construction in the hope it can oust this Court's jurisdiction with a mootness-effecting *fait accompli*.  If it is able to complete construction of the Project while the courts continue to ponder Plaintiffs' requests for preliminary injunctive relief, TransCanada will likely join the Federal Defendants in arguing this case is moot, not because it is dead, but because it has *already been built*.

*Fifth*, the harmful effects of the Project construction that TransCanada has already completed will linger for decades, if not forever.  Under the law of this Circuit, unless and until those long-term impacts are "completely and irrevocably eradicated," this case cannot be moot.  *Karuk Tribe of California v. U.S. Forest Service* ("*Karuk Tribe*"), 681 F.3d 1006, 1019 (9th Cir. 2012).

TransCanada's refusal to abandon Keystone – and active lobbying to persuade the Biden Administration to reverse course –  adds the second punch to the *Texas v. Biden's* first blow to any suggestion that this case is moot.  Together, they dispatch any assertion that this Project is now dead.  It is very much alive. For that reason, neither this action, nor Plaintiffs' *IEN v. Biden* action challenging the Federal Defendant's subsequent decisions to implement the Project, is moot.

Accordingly, this Court should proceed to resolve this action on its merits by deciding the parties' long-pending cross-motions for summary judgment as supplemented by the further briefing the parties filed on November 16, 2020 pursuant to this Court's October 16, 2020 Order (ECF147).  ECF 77-79, 95-102, 115-121, 123-125, 148-150.

- 6 -

**ARGUMENT**

**I.    THE FEDERAL DEFENDANTS CANNOT CARRY THEIR "HEAVY BURDEN" TO PROVE  THEY HAVE PERMANENTLY CEASED THEIR UNLAWFUL CONDUCT.**

It is settled law that the Federal Defendants bear a "heavy burden" if they wish to show their unlawful conduct will never recur as necessary to establish mootness.  *County of Los Angeles*, 840 F.3d at 1102.  They cannot carry this daunting burden here because their unconstitutional conduct has continued rather than ceased, resulting in their being sued a second time, in the *Texas v. Biden* case, for the *same* unlawful conduct.

As the Supreme Court explained nearly 70 years ago, mootness is shown only when the defendant's changed conduct "ha[s] every appearance of being *permanent*" and "[t]he record discloses *no threat or probability of resumption* of the abandoned" misconduct.  *United States v. Oregon State Medical Society* ("*Oregon State Medical Society*"), 343 U.S. 326, 334 (1952) (emphasis added).  The Federal Defendants' unlawful conduct has not been curtailed in the slightest, let alone halted "permanent[ly]" as the law requires for mootness to apply.  *Id.*

The Ninth Circuit has followed this test many times, including its recent *en banc* ruling in  *Board of Trustees of Glazing Health & Welfare Trust v. Chambers* ("*Board of Trustees*"), 941 F.3d 1195, 1198 (9th Cir. 2019).  In that case it held that a suit challenging repealed sections of a statute was moot if "[t]here is *no evidence* in the record indicating a reasonable expectation that the Nevada legislature is likely to enact the same or substantially similar legislation *in the*

- 7 -

*future*." *Id*. at 1199 (emphasis added).  Likewise in *Karuk Tribe, supra,* 681 F.3d

at 1019, the Ninth Circuit applied the same test, holding:  "[a] case becomes moot

on appeal if 'events have *completely and irrevocably eradicated* the effects of the

alleged violation,' and there is *no reasonable expectation* that the alleged violation

will recur."  *Id*. (quoting *American Cargo Transport, Inc. v. United States*

("*American Cargo*"), 625 F.3d 1176, 1180 (9th Cir. 2010)) (emphasis added)).

　　　　As shown below, the Federal Defendants cannot possibly carry their "heavy

burden" of demonstrating that "events have completely and irrevocably

eradicated" the alleged unlawful conduct, as necessary to prove mootness.  Rather,

the indisputable facts show just the opposite:  their unlawful conduct continues

unabated.

## II.   21 STATES HAVE SUED TO OVERTURN PRESIDENT BIDEN'S KEYSTONE REVOCATION ORDER AS UNCONSTITUTIONAL, AND REQUESTED PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF TO BLOCK IT.

　　　　To find mootness here, this Court would have to indulge two false premises.

The first false premise would be that President Biden's Revocation Order is final

and unchallenged.  That could not be true, not by a long shot.  Led by the states of

Texas and Montana, on March 17, 2021, 21 of the 50 states in the Union filed suit

in the Southern District of Texas to overturn the Revocation Order.  See Plaintiffs'

Request for Judicial Notice ("RJN") at Exhibit 1.  These states allege six claims

for relief:  (1) violation of the Separation of Powers Doctrine generally (*id*. at ¶¶

60-72), (2) violation of the Separation of Powers Doctrine based on a conflict with

an act of Congress (*id*. at ¶¶ 73-77), (3) violation of the Separation of Powers Doctrine based on the cabinet officers' implementation of unauthorized executive power (*id*. at ¶¶ 78-88), (4) violation of a variant of the Separation of Powers Doctrine known as the Non-Delegation Doctrine (*id*. at ¶¶ 89-94), (5) violation of the Administrative Procedure Act's ("APA's") prohibition against arbitrary and capricious agency action (*id.* at ¶¶95-99) and (6) violation of the APA's notice and comment requirements (*id*. at ¶¶ 100-104).

The four Separation of Powers claims in *Texas v. Biden* mimic the constitutional claims in this action.  Both suits allege that the challenged Presidential action (President Trump's March 29, 2019 Presidential Permit and President Biden's January 20, 2021 Revocation Order, respectively) violates Article I, Section 8, Clause 3 of the United States Constitution (commonly known as the Commerce Clause) because it sidesteps the procedures set forth in Executive Order 13337, 69 Fed. Reg. 25299 (Apr. 30, 2004), that Congress tacitly approved for years for the permitting of cross-border pipelines, and later expressly prescribed for the permitting of Keystone specifically when it adopted the Temporary Payroll Tax Cut Continuation Act of 2011, Public Law No. 112-78, § 501(a), 125 Stat. 1280 ("TPTCCA").  The TPTCCA required compliance with the specific procedures for permitting Keystone that are set forth in Executive Order 13,337.  *See* RJN Exhibit 1 at ¶¶ 60-94; Plaintiffs' Memorandum of Points and Authorities in Opposition to Federal Defendants' Motion to Dismiss and TransCanada's Motion to Dismiss filed August 22, 2019 (ECF 57) at pp. 24-25,

- 9 -

28-29; this Court's Order filed December 20, 2019 (ECF 73) at pp. 28-29;

Plaintiffs' Brief in Response to the Court's December 20, 2019 Order (ECF 80) at

pp. 25-26, 30, 32-34.

Plaintiffs in this action also alleged an additional Separation of Powers

Doctrine claim under Article IV, Section 3, Clause 2 (commonly known as the

Property Clause).  *See* Plaintiffs' First Amended Complaint ("FAC") filed July 18,

2018 (ECF 37) at ¶¶ 5, 61-68.

The  *Texas v. Biden* Complaint prays for the following, among other, relief:

a.    Declare that Defendants lack the legal authority to prohibit TC
       Energy from constructing and operating the Keystone XL cross-
       border facilities other than through the lawful exercise of statutory
       authority;

b.    *Declare that the President's decision in Section 6 of Executive Order
       13990, "Revoking the March 2019 Permit for the Keystone XL
       Pipeline," is unconstitutional and unlawful, and lacks legal effect;*

c.    Declare that Defendants have no lawful basis to take any action to
       enforce or implement the decision purporting to revoke TC Energy's
       permit to construct and operate Keystone XL cross-border facilities;

d.    *Preliminarily and permanently enjoin defendants from taking any
       action to enforce, implement, or otherwise put into effect the decision
       revoking TC Energy's permit to construct and operate Keystone XL
       cross-border facilities*. . . .

RJN Exhibit 1 at Section VI, Prayer for Relief, p. 38 (emphasis added).

As the *State of Texas* Complaint fully documents, the Revocation Order on

which the Federal Defendants base their mootness claim may be declared

"unconstitutional and unlawful," and President Biden and his administration may

be "preliminarily and permanently enjoin[ed] . . . from enforc[ing], implement[ing]

or otherwise put[ting] into effect the decision revoking [TransCanada's] permit to construct and operate Keystone . . . ." *Id*. at Section VI, Prayer for Relief, p. 38.

If the District Court for the Southern District of Texas grants this relief, then the entire basis for any suggestion that the within action is moot evaporates.  The Federal Defendants cannot demonstrate that a court order granting such relief in the *Texas v. Biden* case is impossible.  It follows that Plaintiffs' action herein cannot be moot.

**III**.   **HAVING SPENT MORE THAN $2 BILLION TO DATE, TRANSCANADA INTENDS TO COMPLETE AND OPERATE KEYSTONE IF THE *TEXAS v. BIDEN* CASE SUCCEEDS**

The second false premise this Court would have to indulge to find this action to be moot would be that TransCanada has decided to just walk away from its decade-long campaign to gain approvals, acquire easements, purchase pipes and pumps, and build roads and other infrastructure for its Project.  The facts refute any such baseless premise.  According to TransCanada's own documents, it has already spent more than two billion dollars on Keystone.  Its most recent status report to this Court belies any suggestion that it plans to forfeit this huge investment without a vigorous fight.

TransCanada has been doggedly pursuing Keystone for over a decade.  It first applied for a Presidential Permit for Keystone on September 19, 2008 – nearly 13 years ago.  ECF 87-1 (Application of TransCanada Keystone Pipeline, LP for a Presidential Permit (DOSKXLDMT0000003 ("DOS3")), Attachment 1 to

Defendants' Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction and Application for Temporary Restraining Order filed February 10, 2020, at p. 4 of 63).  Since that time, TransCanada has been engaged in a concerted effort across two provinces and three states to obtain local, state, provincial and federal governmental approvals, purchase easements and other interests in land across thousands of acres of land and hundreds of waterbodies, construct access roads and support facilities including staging areas, electrical and communication utilities, pumping stations, and at least eight 1000-person "man-camps," all as necessary to build and operate its proposed 1,209-mile long, 36-inch diameter pipeline to transport highly toxic tar sands crude oil from Hardisty, Alberta across over 300 miles of Canadian soil and 882 miles of American soil to Cushing, Nebraska.  Defendant U.S. Department of State ("State") Administrative Record in *Indigenous Environmental Network v. U.S. Department of State*, Civ. No. CV 17-29-GF BMM ("*IEN v. State*") at DOS5651-52, 5662-69, 5675-78, 6275, 6783, 6809.

By its own sworn accounts, TransCanada has already spent more than $2 billion in this effort.  Its responsible officer testified to this Court, for example, that TransCanada intended to spend  "approximately $2.08 billion for construction contractor awards and wages in the United States" in *2019 alone*.  Declaration of Norrie Ramsay, Senior Vice-President, Technical Centre and Liquid Projects at TransCanada Pipelines Limited, filed November 15, 2018 in *Indigenous Environmental Network v. United States Department of State* (*"IEN v. State"*), CV

17-29-GF-BMM, attached as RJN Exhibit 3, at ¶ 25.  This projected 2019 expenditure was on top of more than a decade of previous, substantial outlays to secure permits, acquire easements, utilities, pipes, and pumps, clear lands, excavate hundreds of miles of trenches, and build other infrastructure for its Project.

On June 6, 2019, after and because President Trump had revoked his original Presidential Permit, and issued a new Presidential Permit for the Project on March 29, 2019, the Ninth Circuit granted TransCanada's motion to vacate this Court's November 15, 2018 Judgment, and dissolve this Court's permanent injunction orders, and remanded with instructions to this Court to dismiss Plaintiffs' and the other related district court actions as moot.  Order filed June 6, 2019 in Nos. 18-36068, 18-36069, 19-35036, 19-35064 and 19-35099.  This Order allowed TransCanada to proceed with the Project construction that it had testified would cost more than $2 billion in 2019 alone.

The following year, TransCanada testified to this Court that if its ongoing construction of Keystone were delayed, it "would not make a capital expenditure of approximately $2.08 billion for construction contractor awards and wages in the United States in 2020, and would not expend approximately $500 million for line pipe, pipe transport and delivery, and other associated construction activities." ECF 42-1 (Declaration of Norrie Ramsay, Senior Vice-President of Liquid Projects at TransCanada Pipelines Limited, filed July 24, 2019) at ¶ 14.  It attested further that if it were prevented from continuing its construction of Keystone the

following year, "[t]he total financial harm to third-party construction workers and U.S. workers would be approximately $2.56 billion." *Id*. Its construction the following spring included completion of Keystone's 1.2-mile long "border segment . . . in April and May of 2020." Motion of Appellees TransCanada Keystone Pipeline, LP and TC Energy Corporation for Extension of Time filed January 29, 2021 in Ninth Circuit No. 20-36068 (Dkt. Entry 16) at p. 2.

Against this undisputed documentation of TransCanada's multi-billion dollar investment in Keystone to date, neither the Federal Defendants nor TransCanada has presented any evidence to suggest that TransCanada has nonetheless decided to just abandon this Project. The reason for this is obvious. TransCanada has made no such concession. To the contrary, and consistent with its duty to its shareholders to avoid losses and maximize profits, on April 2, 2021 TransCanada stated, in response to this Court's February 17, 2021 Order requiring its Status Report on this Project, that it is "still assessing and considering its next steps with respect to the project in these novel and complex circumstances." ECF 160 at p. 2. The only reasonable interpretation of this statement is that TransCanada fully intends to resume construction if the *Texas v. Biden* case succeeds.

Other significant but perhaps less obvious factors point to the same conclusion. Normally 'mootness' arises as an affirmative defense when a defendant files a motion seeking to stay or dismiss a lawsuit against it. This case is unusual in that the defendant with the most at stake in seeing Plaintiffs' lawsuit

disappear – TransCanada – has yet to file such a motion.  This is not a mere oversight on its part.  As noted, TransCanada has not filed briefs or declarations in support of the Federal Defendants' Motion [on mootness grounds] to Dismiss Plaintiffs' appeal from this Court's denial of Plaintiffs' Motion for Preliminary Injunction, despite having the opportunity to do so.

Absent any evidence to the contrary, it appears that the reason for TransCanada's silence is that it would not be able to truthfully claim that it has decided to abandon its multi-billion dollar Project.  Such an abandonment would undoubtedly raise eyebrows among, if not prompt actions for legal recourse from, its shareholders, its investors such as the Province of Alberta, and of course the many crude oil sellers and buyers with whom it has contracted for the use of its putative pipeline, and to whom it presumably owes both corporate and contractual duties of due diligence to persist with its efforts to get this Project built and operating, and its profits flowing.

It follows that if TransCanada has no intention of throwing in the towel on this Project, there can be no basis for this Court to dismiss Plaintiffs' lawsuit on mootness grounds.  For under settled law, mootness is shown only when the defendant's changed conduct "ha[s] every appearance of being *permanent*" and "[t]he record discloses *no threat . . . of resumption* of the abandoned" misconduct. *Oregon State Medical Society*, 343 U.S. at 334 (emphasis added).  The Federal Defendants have not made, and cannot make, this required showing.

- 15 -

IV.   **TRANSCANADA IS LOBBYING THE BIDEN ADMINISTRATION TO REVERSE ITS REVOCATION ORDER**

A case is not moot so long as the defendant's past unlawful conduct may recur.  As the Ninth Circuit explained in *Karuk Tribe*, *supra*, 681 F.3d at 1019, "[a] case becomes moot on appeal if . . . there is *no reasonable expectation* that the alleged violation will recur."  *Id.* (quoting *American Cargo*, 625 F.3d at 1180 (emphasis added)).  Far from demonstrating that "there is no reasonable expectation that the alleged violation will recur," TransCanada is currently doing its level best – albeit behind the scenes – to persuade the Biden Administration to undo its Revocation Order and allow TransCanada to resume construction and begin operation.

According to an authoritative article published one week ago by the Center for Responsive Politics, TransCanada has hired at least two "A List" lobbyists – Jeff Ricchetti, brother of White House counselor Steve Ricchetti, and Christopher Putala, former Biden staffer on the Senate Judiciary  Committee from 1989 to 1998, to lobby the White House on "matters concerning energy policy, including *pipelines*, storage facilities, and power generation origination."  April 26, 2021 article entitled *Former Biden Aide Sees Green as Renewable Energy Lobbyist*, by Karl Evers-Hillstrom, published by the Center for Responsive Politics, a true and correct copy of which is attached as Exhibit 3 to Plaintiffs' concurrently filed Request for Judicial Notice (emphasis added).

This Court may take judicial notice of Exhibit 3, as judicial notice may be

- 16 -

taken of any matter "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Such is the case here.

Exhibit 3 is not reasonably subject to dispute.  It is a news article that reports that in January 2021 TransCanada hired two new lobbyists with connections to the Biden Administration.  It reports that TransCanada hired Christopher Putala – who worked from 1989 to 1998 as a staffer for then-Senator Biden on the Senate Judiciary Committee – as a lobbyist, for the purpose of lobbying "the White House on 'matters concerning energy policy, including pipelines, storage facilities, and power generation origination.'"  Exhibit 3, p. 2.  It likewise reports that it hired "Jeff Ricchetti, brother of White House counselor Steve Ricchetti" to lobby the White House "on 'the safe and efficient transportation of natural gas and liquids energy.'"  Exhibit 3, p. 3.  The expenditures and purposes are a matter of public record disclosed in the lobbying reports filed with Congress pursuant to the Lobbying Disclosure Act, 2 U.S.C. section 1604.

This reporting is relevant to the issue of mootness because it establishes that TransCanda continues to invest in lobbying efforts to gain approval for its Keystone Project with the new Biden Administration.  If these efforts prove successful, the Project will resume construction and thereafter, begin operation. That is the polar extreme of "mootness."

Of course, it is the Federal Defendants and TransCanada, rather than

- 17 -

Plaintiffs, who are the parties who are directly and intimately privy to the lobbying overtures the latter has made to the former.  It is up to them to provide the Court with a full and detailed chronicle of their private conversations, so this Court has an opportunity to grasp the unvarnished scope, depth and intimacy of those discussions.

But unless and until the Federal Defendants and TransCanada provide this Court with irrefutable proof that the latter's high-priced and highly-placed lobbying efforts have been terminated – with no lingering effects on the Biden Administration's resolve to maintain its Revocation Order – the Federal Defendants cannot possibly carry their "heavy burden" to demonstrate that this case is moot.

## V.     THE LONG-TERM EFFECTS OF TRANSCANADA'S PROJECT HAVE YET TO BE MITIGATED; AS LONG AS THEY REMAIN THIS CASE IS NOT MOOT.

A case is not moot as long as the effects of the defendant's past unlawful conduct remain, and the harm to plaintiff therefore continues.  As the Ninth Circuit explained in *Karuk Tribe*, 681 F.3d at 1019, "[a] case becomes moot on appeal if 'events have *completely and irrevocably eradicated the effects of the alleged violation*.'"  *Id.* (quoting *American Cargo*, 625 F.3d at 1180 (emphasis added)).  Unless and until the Federal Defendants demonstrate that they have "completely and irrevocably eradicated the effects" of their unlawful approval of the Project, this case cannot be moot.

- 18 -

Plaintiffs have previously demonstrated that TransCanada's massive construction work has caused and will continue to cause widespread environmental and cultural harm, in at least four significant and well-documented respects.

First, the Project involves the destruction of thousands of acres of wildlife habitat (ECF 27-21 (Declaration of Stephan C. Volker in Support of Motion for Preliminary Injunction filed July 19, 2019) at p. 5 (see also, Defendant U.S. Department of State ("DOS") Administrative Record in *Indigenous Environmental Network v. U.S. Department of State*, Civ. No. CV 17-29-GF BMM ("*IEN v. State*") at DOS5952, 5979-5981, 6782-6784, 6908-6811, and Defendant U.S. Fish and Wildlife Service ("FWS") Administrative Record in *IEN v. State* at FWS2062).

Second, the Project threatens the destruction of hundreds of acres of irreplaceable cultural resources including unsurveyed sacred sites of birth rituals and death memorials of priceless importance to Indigenous communities (ECF 27-4 (Declaration of Joye Braun filed July 10, 2019) at pp. 3-6, ¶¶ 5-10; ECF 27-15 (Declaration of Elizabeth Lone Eagle filed July 10, 2019) at pp. 1-9; ECF 27-24 (Declaration of Kandi White filed July 10, 2019) at pp. 8-9).

Third, the Project poses unacceptable risks of water pollution to Indigenous communities with no alternative water supplies (ECF 55-1 (Executive Summary: Analysis of Frequency, Magnitude and Consequence of Worst-Case Spills From the Proposed Keystone XL Pipeline, John Stansbury, Ph.D., P.E.) at pp. 19-20;

- 19 -

ECF 27-24 (Declaration of Kandi White filed July 10, 2019) at pp. 4-9 ¶¶ 5-13;

ECF 27-6 (Declaration of Bill Whitehead filed July 10, 2019) at pp. 3-9 ¶¶ 4-13;

ECF 136 (Plaintiffs' Response to TC Energy's Amended Status Report and

Renewed Request for Preliminary Injunction and Application for Temporary

Restraining Order filed April 14, 2020) at pp. 2-4 and Exhibits 1 and 2); ECF 136-

1 (Excerpts from DOS record in *IEN v. State*, DOS9650-9655); ECF 27-15

(Declaration of Elizabeth Lone Eagle filed July 10, 2019) at pp. 4-8 ¶¶ 6-11; ECF

65-2 (Corrected Declaration of Kathleen Meyer, filed October 7, 2019) at pp. 6-11

¶¶ 10-17; ECF 27-19 (Declaration of Lavae High Elk Red Horse, filed July 10,

2019) at pp. 2-4 ¶¶ 3-6; ECF 55, 55-1, 55-2, 55-3, 55-4, 55-5 (Reply Declaration

of Stephan C. Volker and Exhibits 1-5 thereto, filed August 7, 2019); ECF 43-1

(Declaration of Diane M. Friez and Exhibits 1-2 thereto, filed July 24, 2019); ECF

27-29  (Declaration of Frank Egger filed July 10, 2019) at pp 4-8 ¶¶ 5-13.

Fourth, construction and operation of the Project pose a direct threat to the

safety of Indigenous women and children residing in rural communities in

proximity to TransCanada's massive proposed "man-camps."  ECF 27-6

(Declaration of Angeline Cheek filed July 10, 2019), at pp. 3-19 ¶¶ 3-29.

Unless and until these widespread and profound impacts on the environment

and on Indigenous communities have been "completely and irrevocably

eradicated," this case cannot be moot.  *Karuk Tribe*, 681 F.3d at 1019.  The

Federal Defendants have made no such showing, because they do not even admit

that their approval of the Project was unlawful, and have never taken

responsibility for assuring that all of its long-term impacts are "completely" removed. *Id.*

## VI.    NONE OF DEFENDANTS' AUTHORITIES ARE APPOSITE

Although TransCanada has elected to remain on the sidelines, the Federal Defendants have not.  In support of their Motion to Dismiss on mootness grounds Plaintiffs' appeal from this Court's denial of their Motion for Preliminary Injunction, the Federal Defendants cited no fewer than 22 cases to support their mootness claim.  Ninth Circuit No. 20-36068, Dkt. Entry 19 filed February 24, 2021, at pp. 6-15.  Not one is apposite.  As discussed below, all are based on facts that do not exist here:  a final agency action or circumstance that *irreversibly* moots plaintiffs' claims.

Here, by contrast, President Biden's Revocation Order is already teed up for the judicial chopping block, and the developer whose Project Plaintiffs oppose is more than ready and able to resume construction and commence operation.  For these reasons as explicated below, the Federal Defendants' cases do not avail their mootness claim, which accordingly this Court must reject as well.

### A.    THE REVOCATION ORDER MAY BE DECLARED VOID

The Revocation Order is demonstrably not irreversible.  Its fate is, in actual fact and law, quite the opposite.  As shown above, it could be declared void at any time, depending solely on the calendar preferences of the parties to the *Texas v. Biden* action and their assigned jurist.

- 21 -

The fact that at the moment, the Revocation Order remains in effect is of no moment when examined under the exacting criteria of the federal courts' mootness jurisprudence. There is no such thing as "temporary" mootness. Yet that is all the Federal Defendants can show, at best. Mootness, by contrast, requires a showing of permanent irreversibility in which plaintiffs' claim is irretrievably stymied, as the following section explains. The Federal Defendants cannot make any such showing because *that* would be impossible.

### B.   NO CASE RECOGNIZES "TEMPORARY" MOOTNESS

Because it is indisputable that the Revocation Order could be declared void in the *Texas v. Biden* case – leaving TransCanada free to resume construction – the Federal Defendants' only pathway to mootness is to persuade this Court that mootness need only be temporary. But no case has ever so held.

All of the Federal Defendants' cases hold to the contrary that mootness requires a showing that the defendants' changed behavior is *permanent*. As noted, the Supreme Court articulated the test nearly 70 years ago when it held that mootness is established when the defendant's changed conduct "ha[s] every appearance of being *permanent*" and "[t]he record discloses *no threat or probability of resumption* of the abandoned" misconduct. *Oregon State Medical Society*, 343 U.S. at 334 (emphasis added). The Ninth Circuit has followed that test countless times. For example, its *en banc* panel recently held in *Board of Trustees*, 941 F.3d at 1198, that a suit challenging repealed sections of a statute was moot if "[t]here is *no evidence* in the record indicating a reasonable

expectation that the Nevada legislature is likely to enact the same or substantially similar legislation *in the future*." *Id*. at 1199 (emphasis added).

In summary, it is settled that "[a] case becomes moot . . . if 'events have *completely and irrevocably eradicated* the effects of the alleged violation,' and there is *no reasonable expectation* that the alleged violation will recur." *Karuk Tribe*, 681 F.3d at 1019 (quoting *American Cargo*, 625 F.3d at 1180 (emphasis added). Because President Biden's Revocation Order continues rather than ceases the separation of powers violations that plagued his predecessor's 2019 Presidential Permit, this case is not moot. This inescapable point is shown below.

## C.   NONE OF THE FEDERAL DEFENDANTS' CASES SUPPORTS MOOTNESS

The Federal Defendants cited nearly two dozen cases to support their Motion to Dismiss Plaintiffs' Appeal, and presumably will do so again in their mootness brief to this Court. Ninth Circuit No. 20-36068, Dkt. Entry 19, at pp. 6-15. None do, because all of them require a showing that no effectual relief is available. If, as here, effectual relief is available, then mootness does not exist.

In *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67-72 (1997), (Federal Defendants' Motion at 6), the Supreme Court ruled that plaintiff's resignation from state employment and consequent narrowing of her requested relief to nominal damages against Arizona mooted her suit because section 1983 of the Civil Rights Act on which she based her suit "creates no remedy against a State." *Id.* at 69. Thus, her suit was barred because she had extinguished her own

remedy.  Here, by contrast, there is no suggestion that Plaintiffs have extinguished their claims.  The Federal Defendants' assertion of mootness arises solely from their own Revocation Order whose lawfulness is now under court review.  If the Revocation Order is declared void *ab initio* as 21 states have requested, Plaintiffs' requested remedy remains available.

Likewise in *In re Burell*, 415 F.3d 994, 998 (9th Cir. 2005) (Motion at 6), the court found mootness because "no [requested] relief could have been granted given that [the plaintiff] had *already gotten* the relief he sought." *Id.* (emphasis added).  Here, the relief Plaintiffs seek – a ruling that President Trump's March 2019 Presidential Permit was unconstitutional – has never been granted.  Instead, President Trump's Presidential Permit was replaced by a Revocation Order that perpetuates the same constitutional violations, prompting a similar separation of powers challenge in the *Texas v. Biden* action.  If that second action invalidates the Revocation Order, Plaintiffs will still be denied their requested remedy because they seek to prevent rather than allow construction of Keystone.

In *Nevada v. United States*, 699 F.2d 486, 487 (9th Cir. 1983) (Motion at 6), the Secretary of the Interior imposed a  moratorium on private settlement of federal lands in Nevada pending completion of a water availability study.  After Nevada sued to enjoin the moratorium, the Secretary rescinded his action.  On appeal, the Ninth Circuit affirmed the district court's dismissal of the case on mootness grounds, since the challenged action had been fully remedied.  By contrast here, the Federal Defendants have not remedied the unconstitutional

- 24 -

action challenged by Plaintiffs.  Instead, they have repeated the same constitutional violations, prompting the filing of the *Texas v. Biden* suit.  If that action succeeds in voiding the Revocation Order, then Plaintiffs will have no remedy against the resulting reinstatement of President Trump's Presidential Permit unless this Court rejects the Federal Defendants' mootness claims and proceeds to decide this case on the merits.

Similarly in *Forest Guardians v. U.S. Forest Service*, 329 F.3d 1089, 1094-96 (9th Cir. 2003) (Motion at 6), plaintiffs challenged improper forest management by the Forest Service.  The Ninth Circuit affirmed the district court's dismissal of plaintiffs' claims as moot after the Forest Service took remedial action to address them.  Here, in contrast, the Federal Defendants have not remedied the separation of powers violations Plaintiffs challenge.  Instead, the Federal Defendants have repeated them, resulting in a second suit that seeks reinstatement of the Presidential Permit that Plaintiffs challenge.  Unless this Court rejects the Federal Defendants' mootness claim, Plaintiffs will be left with no remedy.

In *Public Utilities Commission v. FERC*, 100 F.3d 1451, 1458-59 (9th Cir. 1996) (Motion at 6), the Ninth Circuit did find mootness.  But it did so only because "[t]he only relief [plaintiff CPUC] ha[d] requested is that [defendant] FERC's orders [asserting exclusive jurisdiction over a pipeline company's application] be vacated," something FERC "ha[d] already done." *Id*.  In the instant case, by contrast, the Federal Defendants have never even acknowledged,

let alone remedied, the separation of powers violations Plaintiffs challenged. Indeed, because the Federal Defendants failed to do so, and instead repeated those same violations in issuing the Revocation Order, that ostensibly remedial action may in turn be ruled void, leaving Plaintiffs without any remedy at all unless this Court rejects the Federal Defendants' mootness claim.

Likewise in *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995) (Motion at 7), the Ninth Circuit did find mootness. But it did so only because all the harm plaintiffs had sought to prevent was avoided. The plaintiffs sought a declaration that they owned rights to the sea floor, an injunction prohibiting lease sales without plaintiffs' consent, and an accounting of any proceeds from such sales. *Id*. The day after plaintiffs sued, the lease sale was cancelled. The Ninth Circuit affirmed dismissal on mootness grounds because cancellation of the sale eliminated all of plaintiffs' concrete claims of harm. *Id*. Here, by contrast, Defendants' Revocation Order repeats rather than remedies Defendants' constitutional violations. Indeed, due to these constitutional infirmities, it threatens reinstatement of the Presidential Permit that Plaintiffs challenge, leaving Plaintiffs no remedy absent this Court's rejection of the Federal Defendants' mootness claim.

In *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (Motion at 7), the Supreme Court repeated the settled rule that a case becomes moot "when it is *impossible* for a court to grant any effectual relief whatever to the prevailing party." *Id*. (emphasis added). Here, this Court *can* grant effective relief by

- 26 -

rejecting the Federal Defendants' mootness claim, deciding the constitutional challenges Plaintiffs raise, and vacating the March 2019 Presidential Permit, thereby mooting both the need for the Revocation Order and upon its rescission, the derivative *Texas v. Biden* action challenging that order.

In *Friends of Everglades v. South Florida Water Management District*, 570 F.3d 1210, 1216 (11th Cir. 2009) (Motion at 8), the court reiterated the established rule that "to decide a moot issue is to issue an advisory opinion, one unnecessary to the judicial business at hand and outside the authority of Article III courts." Consistent with this rule, Plaintiffs seek a ruling on their constitutional claims that will effectively decide this case and moot the derivative *Texas v. Biden* action.

In *Kremens v. Bartley*, 431 U.S. 119, 136-37 (1977) (Motion at 11), the Supreme Court  reiterated the rule that the "Court will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id*. (quoting *Ashwander v. TVA*, 297 U.S. 288, 345 (1936)).  Plaintiffs agree and have accordingly narrowed the issues raised here to fit "the precise facts to which [they are] to be applied." *Id.*  The Federal Defendants cited this case to dissuade the Ninth Circuit from addressing the constitutional issues raised.  But looking the other way when the Federal Defendants ignore fundamental restraints on their constitutional powers does not save judicial resources.  It squanders them on needless debates about mootness while allowing the Southern District of Texas to decide the same issues first, and as to Plaintiffs here, prejudicially so.

In *Deutsche Bank National Trust Co. v. FDIC*, 744 F.3d 1124, 1135-38 (9th

Cir. 2014) (Motion at 11), the Ninth Circuit applied the doctrine of prudential mootness under which a court may "dismiss an appeal not technically moot if circumstances have changed . . . that forestall any occasion for meaningful relief." This rule has no application here because contrary to that premise, this action presents this Court with an opportunity to provide not only meaningful, but indeed urgently needed, relief to address the grave constitutional violations raised.

In *Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 622-23 (1974) (Motion at 12), the Supreme Court held that where injunctive relief for a "pattern of discrimination" by a previous mayor may not be justified against his successor, its continuation "must rest, at a minimum, on supplemental findings of fact indicating that the new officer *will continue the practice of his predecessor.*"  *Id*. at 622 (emphasis added).  Here, President Biden "continue[d] the practice of his predecessor" by issuing the Revocation Order without compliance with the statutorily-required procedure for the permitting of Keystone that the Constitution has assigned Congress to prescribe.  Thus, the violation of separation of powers remains the same.  As a consequence, President Biden's Revocation Order has been challenged in the *Texas v. Biden* suit, and may be declared void, leaving Plaintiffs with no remedy for President Trump's previous violation of that same doctrine when he issued the 2019 Presidential Permit – unless this Court rejects the Federal Defendants' mootness claim.

Similarly in *Oregon State Medical Society*, 343 U.S. at 334 ( Motion at 12), the Supreme Court looked to the "permanence" of a medical society's change in

conduct to determine whether a suit challenging its past misconduct had become

moot.  The high court considered whether there was "the slightest reason to doubt

the genuineness, good faith or permanence of the changed attitude and strategy of"

the defendant medical society.  It stated that the society's change in conduct

> did not consist merely of pretensions or promises but was an overt and
> visible reversal of policy, carried out by extensive operations *which have*
> *every appearance of being permanent* because wise and advantageous for
> the doctors.  *The record shows no threat or probability of resumption* of the
> abandoned warfare against prepaid medical service and the contract process
> it entails.  We agree with the trial court that *conduct discontinued in 1941*
> *does not warrant the issuance of an injunction in 1949.*

*Id.* at 334 (emphasis added).  By contrast here, President Biden committed the

same separation of powers violations as his predecessor when he issued the

Revocation Order without compliance with the procedure prescribed by Congress,

prompting the *Texas v. Biden* suit that raises separation of powers claims echoing

those Plaintiffs alleged when they filed this suit more than two years ago.

In *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982)

(Motion at 12), the Supreme Court held, consistent with Plaintiffs' position here,

that "it is well settled that a defendant's voluntary cessation of a challenged

practice does not deprive a federal court of the power to determine the legality of

the practice."  *Id.  A fortiori*, where the Federal Defendants have continued rather

than ceased their unconstitutional conduct as in the instant case, this Court

remains fully empowered "to determine the legality of the practice."  *Id*.

In *Board of Trustees, supra (*Motion at 13), the Ninth Circuit confirmed the

mootness test that Plaintiffs have identified – and that they fully meet.  In

reviewing whether a suit against a Nevada statute was mooted by repeal of the challenged sections, the Ninth Circuit examined whether "[t]here is . . . evidence in the record indicating a reasonable expectation that the Nevada legislature is likely to enact the same or substantially similar legislation *in the future*." *Id*. at 1199 (emphasis added). Because here, as noted, President Biden has continued rather than ceased the separation of powers violations that President Trump committed when he issued the 2019 Presidential Permit that Plaintiffs challenge here, under *Board of Trustees*, this case is manifestly not moot.

In *Oregon Natural Resources Council v. Grossarth* (*"Grossarth"*), 979 F.2d 1377, 1379-80 (9th Cir. 1992) (Motion at 13), the Ninth Circuit affirmed dismissal of plaintiffs' suit challenging Forest Service approval of a timber sale that had been cancelled after suit was filed. *Id*. at 1378-79. However, in response to plaintiffs' suggestion of a possible Forest Service practice of withdrawing timber sales to avoid judicial review, the Ninth Circuit noted that plaintiffs might "wish to contend more vigorously . . . that there should be judicial review" of that practice *if documented in a future case*. *Id*. at 1379-80. Although the Ninth Circuit did not consider that allegation because it was *not* documented in the record, its recognition that a defendant agency's repeated misconduct that evades judicial review is an exception to mootness is pertinent here. Likewise in this case, the Biden and Trump administrations have repeatedly strayed beyond the constitutional limits of their executive power as Plaintiffs have documented in their submissions to this Court, establishing an exception to mootness.

- 30 -

*American Cargo, supra,* 625 F.3d at 1180 (Motion at 14), reiterates the general rule that where an agency changes its conduct, the court "presume[s] the government is acting in good faith." *Id.* Whether this "prevailing judicial norm" withstands scrutiny in an era of dubious presidential claims of "election fraud," it is irrelevant here because President Biden continued rather than ceased the allegedly unconstitutional conduct of his predecessor, as noted. Hence this case avails the Federal Defendants' mootness claim nothing.

In *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc) (Motion at 14), the court held that "non-reenactment of a *one-time* condition that expired of its own terms cannot be viewed as cessation of conduct" for purposes of applying the doctrine of mootness. *Id.* (emphasis added). That holding has no application here, where the challenged conduct has been repeated.

In *Center for Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (Motion at 15), the Ninth Circuit recognized three exceptions to the mootness doctrine. This Court need not reach any otherwise applicable exceptions to mootness here because, as shown, the Federal Defendants' unconstitutional conduct is *continuing*.

In *Karuk Tribe, supra,* 681 F.3d at 1018 (Motion at 15), the Ninth Circuit ruled that a challenge to Forest Service approval of suction dredging in the Klamath River was not mooted by the State of California's adoption of a moratorium because "the state's moratorium on suction dredge mining is only temporary." *Id.* at 1019. The Ninth Circuit repeated the settled rule that "[a] case

- 31 -

becomes moot on appeal if 'events have completely and irrevocably eradicated the effects of the alleged violation,' and there is no reasonable expectation that the alleged violation will recur." *Id*., quoting *American Cargo*, *supra*, 625 F.3d at 1179.  The Federal Defendants argue contrary to this established law that mootness does not require a showing that the challenged conduct will never recur. Because they misperceive the law – and because the challenged conduct has *already* recurred – their mootness claim must be rejected.

Finally in *Idaho Department of Fish & Game v. National Marine Fisheries Service*, 56 F.3d 1071, 1075 (9th Cir. 1995) (Motion at 15), the Ninth Circuit held moot a challenge to an expired biological opinion because the successor opinion would not evade court review since its four-year duration provided ample time for review.  This ruling is inapposite because here the challenged unconstitutional conduct did not cease, but is continuing, as confirmed by the *Texas v. Biden* suit.

In summary, none of the Federal Defendants' cases support their mootness claim.  Instead, all of them recognize that "[a] case becomes moot . . . if 'events have *completely and irrevocably eradicated* the effects of the alleged violation,' and there is *no reasonable expectation* that the alleged violation will recur." *Karuk Tribe,* 681 F.3d at 1019 (quoting *American Cargo,* 625 F.3d at 1180 (emphasis added).  Because "there is a reasonable expectation that the alleged violation[s] will recur" – as shown by the fact that they *have already* recurred – this case is not moot.  *Id.*

//

- 32 -

**VII.  THERE ARE AT LEAST THREE COMPELLING REASONS WHY THIS COURT MUST REJECT THE FEDERAL DEFENDANTS' MERITLESS MOOTNESS CLAIM AND RESTORE THIS CASE TO THE COURT'S ACTIVE CALENDAR**

There are at least three reasons why this Court must reject the Federal Defendants' mootness claim.  First, the Federal Defendants cannot demonstrate mootness because they cannot show that the constitutional violations Plaintiffs challenge will not recur.  Second, Plaintiffs' underlying merits claims should be decided by this Court rather than the Southern District of Texas because these issues were raised in this Court first – more than two years ago – and have already been extensively briefed and argued.  Third, this Court should provide itself the opportunity to entertain a renewed request for interlocutory injunctive relief to prevent grave and irreparable environmental harms that are threatened not just to the lands, waters, wildlife and communities along Keystone's approved route, but also to the planet itself should carbon emissions from Keystone exceed global warming's fast approaching tipping point..

**A.  THE FEDERAL DEFENDANTS CANNOT CARRY THEIR "HEAVY BURDEN" OF DEMONSTRATING MOOTNESS IN THE FACE OF THEIR CONTINUING CONSTITUTIONAL VIOLATIONS**

The Federal Defendants bear a "heavy burden" to establish mootness.  Under the law, they can do so only by demonstrating that they have ceased the unlawful conduct that prompted this case.  *County of Los Angeles*, 840 F.3d at 1102.  They cannot carry this burden because their unconstitutional conduct has

- 33 -

continued – resulting in the *Texas v. Biden* case – rather than ceased.

The Federal Defendants' mootness claim asks this Court to accept two false premises:  first, that President Biden's Revocation Order is final and unchallenged, and second, that TransCanada has given up and walked away from its Project. Neither is true.  Indeed, both premises are demonstrably false.  The Revocation Order has been challenged in the *Texas v. Biden* lawsuit, and TransCanada has declined to concede that Keystone is dead.

Because the Federal Defendants' mootness claim is thus without merit, it must be rejected.

**B.    THIS COURT SHOULD NOT ALLOW THE *TEXAS V. BIDEN* LITIGATION TO DISPLACE THIS COURT'S RIGHTFUL PRIORITY IN DECIDING THE SAME CONSTITUTIONAL ISSUES TO PREVENT HARM TO PLAINTIFFS**

Plaintiffs filed their constitutional claims in this Court more than two years ago, long before the *Texas v. Biden* case was commenced in February of this year. This Court has already received extensive briefing on numerous occasions, heard argument in several hearings, and issued a number of pertinent rulings, unlike the Southern District of Texas, which has done none of those things.  Indeed, the Ninth Circuit is already considering an interlocutory appeal in this case.

Under these circumstances, this proceeding should be given priority over the *Texas v. Biden* case, and be decided first.  *See, e.g., Kohn Law Group v. Auto Parts Mfg. Mississippi*, 787 F.3d 1237, 1239-1241 (9th Cir. 2015) (discussing the reasons for the "first-to-file" rule and collecting cases).  Accordingly, to the extent

- 34 -

of any jurisprudential conflict, this Court has clear priority over the Southern District of Texas in deciding first the constitutional issues that are common to both cases.

### C.     THIS COURT SHOULD PREVENT IRREPARABLE HARM

This Court should reject the Federal Defendants' baseless mootness claim and proceed promptly to decide the merits of this action.  And, while it considers the merits, it should entertain a renewed request from Plaintiffs to stay construction of the Project to prevent grave and irreparable environmental harm not just to the lands, waters, wildlife and communities along Keystone's approved route, but also to the planet itself.

As documented above, Plaintiffs have submitted extensive evidence from experts and lay witnesses alike that the Project's construction and operation will destroy thousands of acres of wildlife habitat, threaten the destruction of hundreds of acres of irreplaceable cultural resources including unsurveyed sacred sites of birth rituals and death memorials of priceless importance to Indigenous communities, pose unacceptable risks of water pollution to Indigenous communities with no alternative water supplies, and pose a direct threat to the safety of Indigenous women and children residing in rural communities in proximity to TransCanada's massive proposed "man-camps."

//

//

- 35 -

**CONCLUSION**

As demonstrated, the Federal Defendants' mootness claim is based on two false premises.  The first, that President Biden's Revocation Order is final and unchallenged, is flat wrong.  Twenty-one states have filed suit to overturn it, and the relief they seek includes preliminary and permanent injunctive relief vacating that Revocation Order.  If their lawsuit succeeds, the Revocation Order is null and void, and TransCanada is free – absent a prompt merits ruling from this Court, or a prompt Ninth Circuit ruling on Plaintiffs' pending interlocutory appeal – to complete construction and commence operation of its Project.

The second premise of the Federal Defendants' mootness claim, that TransCanada has thrown in the towel on its two billion dollar investment, is likewise devoid of factual support.  TransCanada is quite aware that its supporters in 21 states have filed the *Texas v. Biden* case to overturn President Biden's Revocation Order.  It has no intention of letting them down – nor, more to the point, of disappointing its own shareholders and investors – by walking away from its improvident investment in this environmentally obsolete and destructive Project.  It eagerly awaits news that the Southern District of Texas – in a state that apparently welcomes the revenue from refining the Project's tar sands crude – will strike down President Biden's Revocation Order.

//

//

//

- 36 -

Because the Federal Defendants' mootness claim is refuted by the record, it must be rejected.

May 5, 2021                    Respectfully submitted,

                              LAW OFFICES OF STEPHAN C. VOLKER

                              s/ *Stephan C. Volker*
                              STEPHAN C. VOLKER (Pro Hac Vice)


                              PATTEN, PETERMAN, BEKKEDAHL &
                              GREEN, PLLC

                              s/ *James A. Patten*
                              JAMES A. PATTEN

                              Attorneys for Plaintiffs
                              INDIGENOUS ENVIRONMENTAL NETWORK
                              and NORTH COAST RIVERS ALLIANCE

## CERTIFICATE OF COMPLIANCE

Pursuant to Montana District Court, Civil Rule 7.1(d)(2)(E), and this Court's April 7, 2021 Order (ECF 162), I certify that **PLAINTIFFS' MEMORANDUM RE MOOTNESS** contains 9,017 words, excluding caption, certificate of service, and signature blocks, as counted by WordPerfect X7, the word processing software used to prepare this brief.


Dated: May 5, 2021            */s/ Stephan C. Volker*
                              STEPHAN C. VOLKER (Pro Hac Vice)


- 37 -

## CERTIFICATE OF SERVICE

I, Stephan C. Volker, am a citizen of the United States.  I am over the age of 18 years and not a party to this action.  My business address is the Law Offices of Stephan C. Volker, 1633 University Avenue, Berkeley, California 94703.

On May 5, 2021 I served the following documents by electronic filing with the Clerk of the Court using the CM/ECF system, which sends notification of such filing to the email addresses registered in the above entitled action:

### PLAINTIFFS' MEMORANDUM RE MOOTNESS

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  May 5, 2021            s/ *Stephan C. Volker*
                               STEPHAN C. VOLKER (Pro Hac Vice)

- 38 -