**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVERS ALLIANCE,<br><br>Plaintiffs,<br><br>vs.<br><br>PRESIDENT DONALD J. TRUMP, et al.,<br><br>Defendants,<br><br>and<br><br>TRANSCANADA KEYSTONE PIPELINE, LP, a Delaware limited partnership, and TC ENERGY CORPORATION, a Canadian Public Company,<br><br>Defendant-Intervenors. | **4:19-cv-00028-BMM**<br><br>**ORDER ON MOOTNESS** |

## INTRODUCTION

Indigenous Environmental Network ("IEN") and North Coast Rivers Alliance ("NCRA") (collectively, "Plaintiffs") brought this action against President Donald J. Trump and various government agencies and agents in their official capacities ("Federal Defendants"). Plaintiffs allege that President Trump violated the Property

Clause of the U.S. Constitution, the Commerce Clause of the U.S. Constitution, and Executive Order 13,337 when he issued a Presidential Permit in 2019 ("2019 Permit") to Defendant-Intervenors TransCanada Keystone Pipeline, LP and TC Energy Corporation (collectively, "TC Energy") to construct a cross-border segment of the Keystone XL oil pipeline ("Keystone"). The Court determines this case is moot for the reasons discussed below.

**BACKGROUND**

TC Energy proposed Keystone as an expansion to its existing pipeline system in 2008. *Indigenous Envtl. Network v. U.S. Dep't of State*, No. CV-17-29-GF-BMM, 2017 WL 5632435, at *1 (D. Mont. Nov. 22, 2017) (hereinafter "*IEN November 2017 Order*"). Keystone would transport up to 830,000 barrels per day of crude oil from Alberta, Canada and the Bakken shale formation in Montana to existing pipeline facilities in Nebraska. *Id*.

TC Energy first applied for a Presidential Permit to construct a pipeline crossing the US-Canada border in September 2008 ("2008 Application"). *Id.* Executive Order 13,337 governed cross-border oil pipeline permitting at that time. Issuance of Permits With Respect to Certain Energy-Related Facilities and Land Transportation Crossings on the International Boundaries of the United States, Exec. Order No. 13,337, 69 Fed. Reg. 25,299 (April 30, 2004) (hereinafter "EO 13,337"). EO 13,337 provided the State Department with the authority to issue Presidential

Permits for cross-border oil pipelines if issuance of the permit to the applicant "would serve the national interest." *Id.* at 25,300. The EO 13,337 process included State Department consultation with other agencies and environmental review of potential projects as required under the National Environmental Policy Act ("NEPA"). *See id.* The State Department issued a final environmental impact statement ("EIS") for Keystone as required by NEPA in August 2011. *IEN November 2017 Order*, 2017 WL 5632435, at *1. The State Department did not issue a Presidential Permit.

Congress passed the Temporary Payroll Tax Cut Continuation Act ("TPTCCA") mere months later. Pub. L. No. 112-78, 125 Stat. 1280 (Dec. 23, 2011). Congress directed the President, acting through the State Department, to render a final decision on TC Energy's 2008 Application within 60 days to either "grant a permit under" EO 13,337 or determine that Keystone "is not in the national interest" and deny the application. *Id.* The State Department denied the 2008 Application. *IEN November 2017 Order*, 2017 WL 5632435, at *2. The State Department explained that the arbitrary sixty-day deadline did not provide it with enough time to consider fully Keystone's potential environmental impacts. *Id.*

TC Energy submitted a new application to the State Department for a Presidential Permit on May 4, 2012 ("2012 Application"). *Id.* The State Department followed the EO 13,337 process to review the 2012 Application and released its

Final Supplemental EIS in January 2014. *Id.* The Secretary of State denied the 2012 Application on November 6, 2015, based on his determination that issuing a Presidential Permit for Keystone would not serve the national interest. *Id.*

Congress acted again on Keystone concurrent with the Secretary of State's consideration of the 2012 Application. Congress approved the Keystone XL Pipeline Approval Act ("Approval Act") on February 11, 2015. Keystone XL Pipeline Approval Act, S. 1, 114th Cong. (Feb. 11, 2015). Congress authorized TC Energy to "construct, connect, operate, and maintain the pipeline and the cross-border facilities described in the [2012 Application]." *Id.* The Approval Act further provided that the State Department's 2014 Final Supplemental EIS "shall be considered to fully satisfy . . . all requirements of [NEPA]; and . . . any other provision of law that requires Federal agency consultation or review (including the consultation or review required under [the ESA]." *Id.* President Obama vetoed the Approval Act. President Obama described the Approval Act as an attempt to "circumvent longstanding and proven processes for determining whether or not building and operating a cross-border pipeline serves the national interest." Veto Message to the Senate: S. 1, Keystone XL Pipeline Approval Act, 2015 WL 758544 (2015).

President Trump took office in January 2017. President Trump soon thereafter issued a Presidential Memorandum to invite TC Energy to reapply for a Presidential Permit. *See* Construction of the Keystone XL Pipeline, 82 Fed. Reg. 8663 (Jan. 24,

2017). President Trump instructed the State Department to exercise his delegated authority to issue the Presidential Permit within sixty days if the State Department determined, as required by EO 13,337, that issuance of the Presidential Permit would serve the national interest. *Id*. at 8663.

TC Energy filed a renewed application to the State Department on January 26, 2017 ("2017 Application"). *IEN November 2017 Order*, 2017 WL 5632435, at *2. Under Secretary of State Thomas A. Shannon published a Record of Decision ("ROD") and a National Interest Determination ("NID") recommending that the State Department approve a Presidential Permit to TC Energy on March 23, 2017. *Id*. at *1. The State Department issued a Presidential Permit for Keystone on April 4, 2017 ("2017 Permit"). *See* Notice of Issuance of a Presidential Permit to TransCanada Keystone Pipeline, L.P., 82 Fed. Reg. 16,467 (Apr. 4, 2017). Plaintiffs in this case challenged the 2017 Permit in another action before this Court. *Indigenous Envtl. Network v. U.S. Dep't of State*, 347 F. Supp. 3d 561, 591 (D. Mont. 2018). The Court vacated the State Department's ROD and NID. *Id.* The Court remanded the matter to the State Department for further consideration. *Id.*

President Trump issued the 2019 Permit on March 29, 2019. Authorizing TransCanada Keystone Pipeline, L.P., To Construct, Connect, Operate, and Maintain Pipeline Facilities at the International Boundary Between the United States and Canada, 84 Fed. Reg. 13,101 (March 29, 2019). President Trump issued the

2019 Permit pursuant to the "authority vested in [him] as President of the United States of America." *Id*. at 13,101.

The 2019 Permit grants TC Energy permission, subject to certain conditions, "to construct, connect, operate, and maintain pipeline facilities at the international border of the United States and Canada . . . for the import of oil from Canada to the United States." The 2019 Permit expressly supersedes and revokes the 2017 Permit. *Id*. The 2019 Permit grants TC Energy permission to construct the cross-border pipeline facilities "notwithstanding" the EO 13,337 process. *Id.* President Trump's 2019 Permit rendered moot the 2017 Permit dispute.

Plaintiffs filed this action on April 5, 2019, to challenge President Trump's issuance of the 2019 Permit. (Doc. 1.) Plaintiffs allege that President Trump violated the Property Clause of the U.S. Constitution, the Commerce Clause of the U.S. Constitution, and Executive Order 13,337 when he issued the 2019 Permit. (Doc. 37 at 24, 27, 37.) Plaintiffs seek declaratory and injunctive relief to prevent all defendants from engaging in activities in furtherance of Keystone. (Doc. 37 at 32–33.) The Court previously denied motions to dismiss, motions for a temporary restraining order and preliminary injunction, as well as motions for leave to file amended complaints. (Docs. 73, 147.) Motions for summary judgment remain pending for both sides. TC Energy filed a Motion for Summary Judgment on January

24, 2020. (Doc. 77.) Federal Defendants and Plaintiffs each filed a Motion for Summary Judgment on February 25, 2020. (Docs. 95 & 100.)

President Joseph R. Biden signed an Executive Order on January 20, 2021 to revoke the 2019 Permit. *See* Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, Exec. Order 13,990, 86 Fed. Reg. 7,037, 7,041 (Jan. 25, 2021). President Biden's revocation noted that the 2019 Permit included an express condition that the President could revoke that permit at "the President's sole discretion." *Id.*

The Court addressed the question of whether President Biden's revocation of President Trump's 2019 Permit rendered Plaintiffs' challenge moot in a prior order. (Doc. 166.) The Court determined that this case presented a live controversy in May of 2021 because the Court could still provide relief to Plaintiffs by ordering the removal of the constructed border segment. (*Id.* at 9.)The Court determined that such relief would meet the requirements of providing "any effectual relief what-ever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox*, 567 U.S. at 307).

TC Energy submitted a Status Report on August 4, 2021, advising the Court that it was in discussions with the Bureau of Land Management ("BLM") regarding its plan to remove the buried pipe in the border segment of the Project and to relinquish the right-of-way it had acquired from BLM. (Doc. 174 at 1-2.) TC Energy

further explained that it was selling property, terminating leases, and relinquishing permits to construct the Project beyond the border segment. (*Id.*)

TC Energy submitted another report in September 2021 stating that BLM and the Montana Department of Environmental Quality had approved TC Energy's decommissioning plan, under which the buried pipeline would be removed and the land restored in the international border segment. (Doc. 176 at 1-2). BLM had approved TC Energy's request to relinquish its right-of-way and temporary use permit over federal lands beyond the international border segment. (*Id*. at 1.)

TC Energy gave notice on October 19, 2021, that it had finished excavating and removing the buried pipeline in the border segment. (Doc. 178 at 1-2.) TC Energy also had performed reclamation measures to restore the land disturbed by the removal of the pipe as required by the decommissioning plan and will relinquish to BLM the right-of-way grant at the border when BLM determines that the reclamation measures are successful, which is expected in 2022. (*Id.*)

The Southern District of Texas recently decided a related case. In *State of Texas v. Biden*, 3:21-cv-00065 (S.D. Tex.), Texas and 22 other states sued President Biden and ten agency heads challenging the President's authority to revoke the Presidential Permit granted for the construction of the Keystone pipeline. The Southern District of Texas determined that the case was moot because TC Energy had removed the pipeline and revoked its permits. 3:21-cv-00065, Doc. 150 at 14/15.

The time for appeal has now run and Parties have confirmed that no appeal was filed. (*See* Doc. 185.)

**ANALYSIS**

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, §2. As a result, federal courts may not "decide questions that cannot affect the rights of litigants in the case." *Chafin*, 568 U.S. at 172. Federal courts also may not advise "what the law would be upon a hypothetical state of facts." *Id*.

A federal court may consider a case only when the parties in that case maintain a live dispute. That dispute must remain active until the court's final disposition. A federal court lacks jurisdiction to proceed when a live controversy becomes moot. A controversy becomes moot "'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id*. (quoting *Knox* v. *Service Employees*, 567 U.S. 298, 307 (2012)). "'[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Id*. (quoting *Knox*, 567 U.S. at 307–08). For a case to be truly moot, the controversy must meet a "demanding standard." *Mission Product Holdings*, *Inc*. v. *Tempnology*, *LLC*, __ U.S. __, __, 139 S. Ct. 1652, 1660 (2019); *see also Adarand Constructors*, *Inc*. v. *Slater*, 528 U.S. 216, 222 (2000) (per curiam) (internal quotation marks omitted) (describing the "heavy burden" required to prove mootness).

There no longer remains any live case or controversy. The Court determined that this case was not moot in May of 2021 because the pipeline remained in the ground and because it was unclear at that time whether the President could "issue unilaterally another permit to TC Energy." (Doc. 166 at 10.) As Plaintiffs addressed in their mootness brief, the State of Texas's challenge to President Biden's revocation posed a real possibility that the Presidential Permit would be reinstated. (*See* Doc. 165 at 8-11.) These factors have been resolved such that the case is now moot.

No pipe remains in the ground that the Court could order removed. TC Energy had constructed 1.41 miles of pipeline into Montana from the international boundary. (Doc. 178 at 2.) This work included the 1.2 miles covered by the now-revoked 2019 Presidential Permit, plus an additional 0.21 miles to the installation of an aboveground facility. (Id.) The first 0.93 miles from the U.S./Canada border was constructed on land within a right-of-way that the Bureau of Land Management ("BLM") granted TC Energy for construction and operation of the Project. *Id.* The remaining 0.48 miles (0.27 miles covered by the Presidential Permit) of the border-crossing segment was constructed on Montana state lands. (*Id.*) TC Energy has completed excavating and removing the buried pipeline in the border-crossing segment, in accordance with the decommissioning plan approved by BLM. (*Id.*) TC Energy has already relinquished 43.47 miles of the right-of-way grant outside the

border-crossing segment of Keystone XL. (*Id.* at 3.) TC Energy will relinquish to BLM the remaining 0.93 miles of the right-of-way grant at the border when BLM determines that the reclamation measures have been successful. (*Id.*) Remediation is expected to conclude in 2022. (*Id.*)

There no longer exists a possibility that the challenged permit will be reinstated by the District Court for the Southern District of Texas. The Southern District of Texas determined that Texas's challenge seeking to reinstate the Presidential Permit is moot. *State of Texas*, 3:21-cv-00065, Doc. 150. The Southern District of Texas noted that TC Energy had begun removing the border crossing segment of the pipeline, relinquished a number of critical approvals, and had stated that it "will not pursue any permits for the Project, nor will it perform any construction activities in furtherance of the Project now or at any time in the future." *Id.* at 13/14.

The Southern District of Texas relied on these facts and determined that the Keystone XL project was "dead" and that "any ruling [the Southern District of Texas] makes on whether President Biden had the authority to revoke the permit would be advisory." *Id.* at 15/16. The relief that Texas had sought was effectively "to revive a project that its owner has permanently abandoned," and Texas "lack[ed] a legally cognizable interest in the outcome." *Id.* at 18/18. The district court

recognized that it was not "capable of providing [] meaningful relief," because there was no longer any threat of the Presidential Permit being reinstated. *Id.*

The Southern District of Texas also determined that the mootness exception for a repeatable case did not apply. There was not a reasonable expectation that the case was repeatable, given the many necessary permits that were required for the project that had been relinquished by TC Energy. *Id.* at 17/18. The district court also distinguished this case from others where the challenged action occurred in such short duration as to be impossible to fully litigate prior to cessation. *See, e.g.*, *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126–27 (1974) (labor strike); *Roe v. Wade*, 410 U.S. 113, 125 (1973) (pregnancy); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (election law). The district court noted TC Energy's decades-long process for this project when determining that, if a similar permit application were to present itself in the future, it would not present such an immediate threat that it would be impossible to litigate the validity of the permit prior to a presidential action. *Id.* at 15/16.

The Court follows similar reasoning as the Southern District of Texas in concluding that this case is now moot. There no longer exists any pipe that can be removed, the right-of-way permits will be disposed of following remediation, and the Presidential Permit will not be reinstated by the Southern District of Texas. Given these developments, the Court's prior reasoning that the case was not moot

proves inapplicable. The Court can no longer provide the Plaintiffs any meaningful relief. When a court cannot grant any relief that would not be purely advisory, the case is moot. *See id.* at 18/18 (quoting *Texas Dep't of Fam. & Protective Servs. v. Azar*, 476 F. Supp. 3d 570, 580 (S.D. Tex. 2020) ("Without a live controversy, 'it is impossible for a court to grant any effectual relief whatever to the prevailing party.'")).

Accordingly, **IT IS ORDERED** that:

- Plaintiffs' Complaint (Doc. 37) is **DISMISSED AS MOOT**.

Dated this 11th day of March, 2022.

Brian Morris, Chief District Judge
United States District Court